## VANDERBILT *v.* EIDMAN.

### CERTIFICATE FROM THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 206.   Argued October 13, 14, 1904.—Decided February 20, 1905.

Where a legacy under the will of one dying in September, 1899, was to be held in trust by the executors, the legatee only to receive the income until he reached a specified age, which would be subsequent to 1902, when he was to receive the principal, §§ 29 and 30 of the war revenue act of June 13, 1898, 30 Stat. 464, did not authorize the assessment or collection, prior to the time when, if ever, such rights or interests should become absolutely vested in possession and enjoyment, of any tax with respect to any of the rights or interests of the legatee with the exception. of his present right to receive the income until the age specified.

The amendatory act of March 2, 1901, 31 Stat. 946, as to the questions involved in this suit reënacted §§ 29 and 30 of the act of 1898 and did not enlarge them so as to embrace subjects of taxation not originally included therein, and did not justify the new construction thereafter placed upon the act by the Government, that death duties should become due within one year as to legacies and distributive shares not capable of being immediately possessed and enjoyed and therefore not subject to taxation under the original act.   The refunding act of June 27, 1902, 32 Stat. 406, passed after §§ 29 and 30 of the act of 1898 had been repealed by the act of April 12, 1902, 32 Stat. 96, was in a sense declaratory of the construction now given by this court to those sections of the act of 1898 and was a legislative affirmance of such construction of the act as it had been adopted by the Government prior to the amendatory act of March 2, 1901, and a repudiation of the opposite construction adopted thereafter.

CORNELIUS VANDERBILT died in the city of New York on September 12, 1899, leaving a will, which was admitted to probate, the seventeenth clause of which provides as follows:.

"Seventeenth: All the rest, residue and remainder of all

the property and estate, real, personal and mixed, of every description, and wheresoever situated, of which I may die seized or possessed, or to which I may be entitled at the time of my decease, including all lapsed legacies and the principal of any annuities which may terminate and any part of my estate which may not have been effectually devised or bequeathed or from any other source, I give, devise and bequeath to my executors, hereinafter named, and the survivors and survivor of them, IN TRUST, to hold said estate and invest and reinvest the same and to collect the rents, issues, income and profits therefrom for the use of my son Alfred G., and to apply so much of said net income as may be in their judgment advisable, to his support, maintenance and education, and for the care and maintenance of his property during his minority, and to accumulate any surplus income, such accumulations to be paid to him when he arrives at the age of twenty-one years and thereafter to pay the net income of said estate to him as received until he arrives at the age of thirty years, when he shall be put in full possession of one-half the portion of said estate to be set apart for that purpose by my executors and survivors of them. And upon further trust thereafter to pay to my said son, Alfred G. the income from the balance remaining of said estate until he shall arrive at the age of thirty-five years, when he shall be put in possession of the balance of said trust estate, and the said trustees shall be discharged from any and all liability and responsibility in respect thereof. If my son Alfred G. should die before attaining the age of thirty-five years, leaving issue, such portion of the estate as shall not then have come into his possession shall be divided by my executors into as many equal shares as he may leave children surviving, and one share shall be held by my executors to the use of each such child or children until he or she shall attain the age of twenty-one years, when it shall be paid to such child; but if he shall die without child or children, or if none of his children shall attain majority, then it is my will that my son Reginald C. shall in all respects, as to

said residuary estate stand in the place and stead of his brother Alfred G., and that if Alfred G. shall die without issue before he attains the age of thirty years, then Reginald C. shall receive the income from said estate until he attains the age of thirty years, when he shall be put in possession of one-half of the residuary estate, and thereafter Reginald C. shall receive the net income of the remaining one-half of my estate, and on arriving at the age of thirty-five years he shall be put in possession of the whole of said estate, and my said executors shall hold said estate upon such trust, and I give and devise the same accordingly. If Alfred G. and Reginald C. shall both die before being put into possession of said estate, and without issue, I give whatever then remains of my residuary estate to my daughters Gertrude and Gladys Moore, share and share alike; and if either of my said daughters be then dead leaving issue, her issue to take his or her mother's share, *per stirpes* and not *per capita;* and in default of issue, the survivor shall take the principal."

This clause contains the only provisions in the will relating to or in any manner affecting the disposition of the residuary estate of the testator, and determining the extent and character of the interests therein.

All of the children of Cornelius Vanderbilt, named in the seventeenth clause of his will, were living at the time this suit was brought. At the time of the death of Cornelius Vanderbilt his son, Alfred G. Vanderbilt, was between twenty-two and twenty-three years of age, and his son, Reginald C. Vanderbilt, was between nineteen and twenty years of age, and both were unmarried.

The appraised value of the residuary personal estate at the time of the testator's death was $18,972,117.46.

The right of Alfred G. Vanderbilt to the beneficial enjoyment, as provided in the will, until he became thirty years of age, was appraised at $5,119,612.43, and upon this sum the executors paid a death duty under sections 29 and 30 of the act of June 13, 1898, 30 Stat. 448, 464, at the rate of two and

one-fourth per cent, the tax amounting to $115,191.28. After payment of this amount and subsequently to the passage on March 2, 1901, 31 Stat. 938, of an amendment to the war revenue act of 1898, the Commissioner of Internal Revenue, considering that by that amendment Alfred G. Vanderbilt had become immediately liable for a tax on his right to succeed to the whole residue if he lived to the ages of thirty and thirty-five years respectively, assessed a death duty based upon that hypothesis. In making this assessment as by the mortality tables it was shown that Alfred G. Vanderbilt had a life expectancy beyond the ages of thirty and thirty-five years, the Commissioner assessed the interest as a vested estate equal in value to the sum of the entire residuary estate, viz., $18,972,117.46. Upon this valuation a tax was levied of two and one-fourth per cent, producing $426,872.64. On this amount, however, credit was allowed for the sum of the tax previously paid, leaving the balance due $311,681.36. On September 3, 1901, this balance was paid by the executors under protest, "and upon compulsion of the collector's threat of distraint and sale." The executors thereupon made the statutory application to the Commissioner of Internal Revenue for the refunding of the amount, and it being refused, commenced in the Circuit Court of the United States for the Southern District of New York this action to recover the payment.

The facts, as above stated, were averred, and the right to recover was based upon the ground that, as Alfred G. Vanderbilt only had the enjoyment presently of the revenues of the residuary estate up to the period when he might attain the age of thirty years, he was only liable to be assessed upon that beneficial interest. For this reason it was charged that the assessment made of the bequest to Alfred G. Vanderbilt of the whole residuary estate, upon condition that he reached the ages of thirty and thirty-five years respectively, was unwarranted.

The Circuit Court, on the ground that the complaint did not

state a cause of action, sustained a demurrer to that effect filed by the Government, and dismissed the action. 121 Fed. Rep. 590. The Circuit Court of Appeals stated the facts as above recited, and certified certain questions.

*Mr. Howard Taylor*, with whom *Mr. Henry B. Anderson* and *Mr. Chandler P. Anderson* were on the brief, for plaintiffs in error:

Sections 29 and 30 of the act of June 13, 1898, imposed a legacy tax as distinguished from a probate tax; that is, they provided for the imposition of a tax upon the right to take a beneficial interest in the property of a decedent, arising in the manner prescribed in the act, which tax was directed to be assessed at a certain rate per cent of the clear value of such beneficial interest, the rate being primarily determined by the relationship of the beneficiary to the testator. Where property is limited in trust they did not provide for the imposition of a tax upon the passing to the trustees of the bare legal title to the property regardless of the character of the beneficial interest or interests therein.

See *Knowlton* v. *Moore*, 178 U. S. 41, as to the rights and objects upon which death duties are imposed and the right of Congress to levy such taxes, the form of the tax under this particular act and its mode of assessment, and that the tax is imposed not upon the whole bulk of the estate but with respect to each separate legacy and is paid out of the legacy with respect to which it is assessed. *Fitzgerald* v. *Rhode Island Trust Co.*, 52 Atl. Rep. 814. Nor is the tax upon the property passing but on the succession. *United States* v. *Perkins*, 163 U. S. 625; *Magoun* v. *Illinois Trust &c. Bank*, 170 U. S. 283; *Snyder* v. *Bettman*, 190 U. S. 249.

It therefore appears that the tax imposed with respect to a legacy under the act of 1898 is a tax upon the interest in property to which a person succeeds upon another's death, and that such interest must be a present beneficial interest of a legatee and not merely a trustee's interest as custodian of

the property, which is not a beneficial interest and has no clear value upon which to compute the tax, and conversely it appears that the tax is not upon the property itself, nor upon the mere passing of property, nor upon an interest in property which ceased by reason of death.. It is further evident that, under this act a legacy tax has nothing to do with the bulk or value of the estate of the testator, but only with the legatee's interest in the particular legacy out of which the tax is payable, and, although it is payable out of such legacy, it is not computed upon the value of the property passing under such legacy, but only upon the clear value of the beneficial interest in such legacy, and consequently, that unless and until such interest has a clear value, no tax can be assessed.

The tax was intended to attach only to present interests and the assessment and collection of taxes upon future rights or interests which are contingent, or which if vested are subject to conditions subsequent which may prevent them ever coming into possession, must be postponed until they become absolutely vested.

Similar state statutes have been so construed. *Matter of Swift*, 137 N. Y. 77, 88; *Matter of Davis*, 149 N. Y. 539; *Matter of Curtis*, 142 N. Y. 219; *Matter of Roosevelt*, 143 N. Y. 120; *Matter of Hoffman*, 143 N. Y. 327; *Matter of Cager*, 111 N. Y. 342; *Matter of Vanderbilt*, 172 N. Y. 69, 72; *Matter of Brez*, 172 N. Y. 609; *Billings* v. *People*, 189 Illinois, 472; *People* v. *McCormick*, 208 Illinois, 437.

The subsequent acts of Congress relating to the war revenue act show that it was intended to be construed and applied as imposing a tax assessable only upon beneficial interests and collectible only when such interests are actually perfected either in possession or enjoyment.

By the seventeenth clause of the will Alfred G. Vanderbilt has four separate and distinct interests in the residuary estate, one of which, namely, his right to receive the income in the entire residue until he becomes thirty years of age, is vested and subject to taxation, and three of which, namely, his right

to receive one-half of the principal of the residue upon becom-
ing thirty years of age, his right to receive the income in the
other half of the residue until he shall become thirty-five years
of age, and his right to receive the principal of the other half
of the residue upon reaching that age, are all future interests
and not presently taxable.

As to whether a gift is future or contingent or there is an
immediate vested interest, see *Leake* v. *Edwards*, 2 Mer. 363;
*Warner* v. *Durant*, 76 N. Y. 133, 136; *Smith* v. *Edwards*, 88
N. Y. 92, 103; *Goebel* v. *Wolf*, 113 N. Y. 405, 412; *Zartman* v.
*Ditmars*, 37 App. Div. N. Y. 173; *Vawdry* v. *Geddes*, 1 Russ.
& M. 203; *Greenland* v. *Waddell*, 116 N. Y. 234; *Schlereth* v.
*Schlereth*, 173 N. Y. 453; *Matter of Seaman*, 147 N. Y. 69;
*Campbell* v. *Stokes*, 142 N. Y. 23; *Stevenson* v. *Lesley*, 70 N. Y.
512; *Rudd* v. *Cornell*, 171 N. Y. 114; *Matter of Vanderbilt*, 172
N. Y. 69; *Matter of Tracy*, 179 N. Y. 519, and cases cited.

These interests, being future and conditional, and likely to
be defeated before they can vest in possession or enjoyment,
no tax can be assessed or collected with respect to them under
the war revenue law until they vest absolutely. Whether
they are called contingent or vested, or by whatever name
they are designated, the fact is that they are not rights of
actual ownership and they have no clear value upon which a
tax can be computed. They should therefore be treated in the
same way that the remainder interests were treated in the case
of *Knowlton* v. *Moore, supra*, where no tax was assessed with
respect to such interests in the residue, pending the termina-
tion of the intervening interests therein.

The present "clear value" of all the beneficiary's interests
in the residue, the enjoyment of two of which are conditional
upon his reaching the age of thirty years, and the enjoyment
of one of which is conditional upon his reaching the age of
thirty-five years, cannot now accurately be determined but
obviously is not equal to the full cash value of the property
comprising the entire residue.

The war revenue law does not require the collection of a

tax imposed thereunder until the beneficiary becomes entitled
to the actual possession or enjoyment of the legacy.

*Mr. Assistant Attorney General Robb* for defendant in error:

Vested remainders are taxed by the war revenue law, *Knowl-*
*ton* v. *Moore*, 178 U. S. 41, 71. The history of the legacy tax
legislation and analysis of this statute show this. See con-
struction of act of 1866 in *Mason* v. *Sargent*, 104 U. S. 689;
*Pennsylvania Company* v. *McClain*, 105 Fed. Rep. 367; *S. C.,*
108 Fed. Rep. 618. Vested remainders are taxed upon vesting.
*Land Title Co.* v. *McCoach*, 127 Fed. Rep. 381, 386; *Brown* v.
*Kinney*, 128 Fed. Rep. 310; *Peck* v. *Kinney*, 128 Fed. Rep. 313.
Such a tax results in no injustice. *United States* v. *Perkins*,
163 U. S. 625; *Plummer* v. *Coler*, 178 U. S. 115; *United States*
v. *Fox*, 94 U. S. 315; *Snyder* v. *Bettman*, 190 U. S. 249. The
uniformity clause of the Constitution is not violated. *Knowl-*
*ton* v. *Moore*, 178 U. S. 41; *License Tax Case*, 5 Wall. 472;
*United State* v. *Singer*, 15 Wall. 111; *Head Money Cases*, 112;
U. S. 580. Subsequent legislation of Congress shows this was
the intent. See also the New York cases cited on brief of
plaintiff in error construing New York statute and *Matter of*
*Stewart*, 131 N. Y. 274; *Matter of Davis*, 149 N. Y. 139. The
tax is collectible when the remainder vests. The interests of
the beneficiary are vested remainders. See in Federal courts
*Price* v. *Watkins*, 1 Dallas, 8; *Carver* v. *Astor*, 4 Pet. 1; *Crane*
v. *Morris*, 6 Pet. 598; *Coxall* v. *Shererd*, 5 Wall. 268; *Doe* v.
*Considine*, 6 Wall. 458; *Cropley* v. *Cooper*, 19 Wall. 167;
*Daniel* v. *Whartenby*, 17 Wall. 639; *Clapp* v. *Mason*, 94 U. S.
589; *McArthur* v. *Scott*, 113 U. S. 340; *Thaw* v. *Ritchie*, 136
U. S. 519; *Williams* v. *Hedrick*, 96 Fed. Rep. 657; *Tirrell* v.
*Bacon*, 3 Fed. Rep. 62; *In re Wood*, 98 Fed. Rep. 972; *In re*
*Haslett*, 116 Fed. Rep. 680; *In re McHarry*, 11 Fed. Rep. 498;
and New York cases, *Doe* v. *Provoost*, 4 Johns. 61; *Hone's*
*Executors* v. *Van Schaick*, 20 Wend. 564; *Moore* v. *Lyons*, 25
Wend. 119; *Everitt* v. *Everitt*, 29 N. Y. 39; *Moore* v. *Little*, 41
N. Y. 66; *Manice* v. *Manice*, 43 N. Y. 303; *Livington* v. *Greene*,

52 N. Y. 118; *Warner* v. *Durant,* 76 N. Y. 133; *Monargue* v. *Monargue,* 80 N. Y. 320; *Radley* v. *Kuhn,* 97 N. Y. 26; *Van Brunt* v. *Van Brunt,* 111 N. Y. 178; *Goebel* v. *Wolf,* 113 N. Y. 405; *Campbell* v. *Stokes,* 142 N. Y. 23. The cases cited by plaintiff in error can be distinguished. The interests were taxed according to their clear value.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The four questions certified are as follows:

"I. Is the tax imposed by sections 29 and 30 of the act of Congress of June 13, 1898, entitled 'An act to provide ways and means to meet war expenditures, and for other purposes,' with respect to Alfred G. Vanderbilt's interest under the seventeenth clause of the will of Cornelius Vanderbilt, a tax upon the transmission to and receipt by the trustees of the property passing to them as trustees under the legacy out of which such interest arises?

"II. If the preceding question is answered in the negative, is the tax imposed under said act with respect to Alfred G. Vanderbilt's interest under said seventeenth clause a tax upon the transmission to and receipt by said Alfred G. Vanderbilt of his beneficial interest in the property passing under such legacy?

"III. Did sections 29 and 30 of said act authorize the assessment and collection of a tax with respect to any of the rights or interests of Alfred G. Vanderbilt as a residuary legatee of the personal estate of Cornelius Vanderbilt under the seventeenth clause of the will, with the exception of his present right to receive the income of such estate until he attains the age of thirty years, prior to the time when, if ever, such rights or interests shall become absolutely vested in possession or enjoyment?

"IV. If the tax under sections 29 and 30 of said act was presently assessable and collectible upon all the interests of

Alfred G. Vanderbilt in said legacy, was the clear value of all such interests, for the purposes of computing the tax, equal to the full value of the property comprised in the legacy out of which such interests arose?"

Whilst the questions, apparently, present distinct matters, yet underlying and involved in them all is the fundamental consideration whether the burden imposed by the war revenue act was confined to the interest of which Alfred G. Vanderbilt had the beneficial right of immediate enjoyment, or whether that burden also bore upon the right to the residue which Alfred G. Vanderbilt might possess or enjoy in the future, if he lived to the ages specified in the will, upon the theory that the right so to possess or enjoy in the future was technically vested. To avoid repetition we therefore come at once to the consideration of this subject in order that when we have disposed of it we may be able, in the light of the correct construction of the statute, to respond to the questions propounded, in so far as it may be found necessary to do so.

Before coming to the statute we put aside as not directly decisive of the question here presented a case referred to by both parties, that is, *Knowlton* v. *Moore*, 178 U. S. 41. Whilst that case involved the constitutionality of the act of Congress, with whose meaning we are here concerned, it required a construction of that act only to the extent necessary to enable it to be decided what was the subject upon which the law levied the tax, and whether the statute required the tax levied to be progressively increased by reference to the whole amount of the estate of the decedent, or alone by reference to the particular legacy or distributive share upon the right to succeed to which the tax bore. The case did not, therefore, pass on the controversies here arising.

To state briefly the conflicting contentions of the parties as to the meaning of the statute may serve to accentuate and narrow the question for decision. The proposition of the Government is thus stated in the argument:

"First, vested remainders are taxed by the law of June 13,

1898, the tax attaching at the time of vesting; second, the tax is to be assessed and collected at the time of vesting; third, the interest of Alfred G. Vanderbilt in the principal of the residue, which the will provides he shall be put in full possession of, one-half at the age of 30, and the other half at the age of 35, is a vested remainder."

The contrary contentions are as follows: First. That Congress in the act in question did not concern itself with the mere technical vesting of the title to possibly possess or enjoy in the future personal property; but, on the contrary, the act subjected to the death duties which it imposed only real and beneficial interests. In other words, the proposition is that the act did not make subject to taxation a gift, which, even if technically vested in title, was yet subject to be defeated in possession or enjoyment by the happening of a contingency stated in the will. The argument, therefore, is that where such a gift was made by will, no tax could be imposed until the time when, by the happening of the contingency stated, the right to possess or enjoy had accrued. Second. That even if the statute imposed a tax upon vested remainders the interest in question was a contingent and not a vested remainder.

The provisions of the act of 1898, which require elucidation for the purpose of disposing of these contentions, are contained in sections 29 and 30. They are reproduced in the margin.[1]

------

[1] Act of June 13, 1898, c. 448.

SEC. 29. That any person or persons having in charge or trust, as administrators, executors, or trustees, any legacies or distributive shares arising from personal property, where the whole amount of such personal property as aforesaid shall exceed the sum of ten thousand dollars in actual value, passing, after the passage of this act, from any person possessed of such property, either by will or by the intestate laws of any State or Territory, or any personal property or interest therein, transferred by deed, grant, bargain, sale, or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor, to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, shall be, and hereby are, made subject to a duty or tax, to be paid to the

It will be observed that the duties imposed in section 29 have relation to two classes, first, legacies or distributive shares passing by death and arising from personal property; and, second any personal property or interest therein trans-

---

United States, as follows—that is to say: Where the whole amount of said personal property shall exceed in value ten thousand dollars and shall not exceed in value the sum of twenty-five thousand dollars, the tax shall be:

First. Where the person or persons entitled to any beneficial interest in such property shall be the lineal issue or lineal ancestor, brother, or sister to the person who died possessed of such property, as aforesaid, at the rate of seventy-five cents for each and every hundred dollars of the clear value of such interest in such property.

Second. Where the person or persons entitled to any beneficial interest in such property shall be the descendent of a brother or sister of the person who died possessed, as aforesaid, at the rate of one dollar and fifty cents for each and every hundred dollars of the clear value of such interest.

Third. Where the person or persons entitled to any beneficial interest in such property shall be the brother or sister of the father or mother, or a descendent of a brother or sister of the father or mother, of the person who died possessed as aforesaid, at the rate of three dollars for each and every hundred dollars of the clear value of such interest.

Fourth. Where the person or persons entitled to any beneficial interest in such property shall be the brother or sister of the grandfather or grandmother, or a descendant of the brother or sister of the grandfather or grandmother, of the person who died possessed as aforesaid, at the rate of four dollars for each and every hundred dollars of the clear value of such interest.

Fifth. Where the person or persons entitled to any beneficial interest in such property shall be in any other degree of collateral consanguinity than as hereinbefore stated, or shall be a stranger in blood to the person who died possessed, as aforesaid, or shall be a body politic or corporate, at the rate of five dollars for each and every hundred dollars of the clear value of such interest: *Provided,* That all legacies or property passing by will, or by the laws of any State or Territory, to husband or wife of the person died possessed, as aforesaid, shall be exempt from tax or duty.

Where the amount or value of said property shall exceed the sum of twenty-five thousand dollars, but shall not exceed the sum or value of one hundred thousand dollars, the rates of duty or tax above set forth shall be multiplied by one and one-half; and where the amount or value of said property shall exceed the sum of one hundred thousand dollars, but shall not exceed the sum of five hundred thousand dollars, such rates of duty shall be multiplied by two; and where the amount or value of said property shall exceed the sum of five hundred thousand dollars, but shall not exceed the sum of one million dollars, such rates of duty shall be multiplied by two and one-half; and where the amount or value of said property shall exceed

ferred by deed, grant, bargain, sale or gift, to take effect in possession or enjoyment after the death of the grantor or bargainor, in favor of any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise. As to this

the sum of one million dollars, such rates of duty shall be multiplied by three.

SEC. 30. That the tax or duty aforesaid shall be a lien and charge upon the property of every person who may die as aforesaid for twenty years, or until the same shall, within that period, be fully paid to and discharged by the United States; and every executor, administrator, or trustee, before payment and distribution to the legatees, or any parties entitled to beneficial interest therein, shall pay to the collector or deputy collector of the district of which the deceased person was a resident the amount of the duty or tax assessed upon such legacy or distributive share, and shall also make and render to the said collector or deputy collector a schedule, list, or statement, in duplicate, of the amount of such legacy or distributive share, together with the amount of duty which has accrued, or shall accrue, thereon, verified by his oath or affirmation, to be administered and certified thereon by some magistrate or officer having lawful power to administer such oaths, in such form and manner as may be prescribed by the Commissioner of Internal Revenue, which schedule, list, or statement shall contain the names of each and every person entitled to any beneficial interest therein, together with the clear value of such interest, the duplicate of which schedule, list, or statement shall be by him immediately delivered, and the tax thereon paid to such collector; and upon such payment and delivery of such schedule, list, or statement said collector or deputy collector shall grant to such person paying such duty or tax a receipt or receipts for the same in duplicate, which shall be prepared as hereinafter provided. Such receipt or receipts, duly signed and delivered by such collector or deputy collector, shall be sufficient evidence to entitle such executor, administrator, or trustee to be credited and allowed such payment by every tribunal which, by the laws of any State or Territory, is, or may be, empowered to decide upon and settle the accounts of executors and administrators. And in case such executor, administrator, or trustee shall refuse or neglect to pay the aforesaid duty or tax to the collector or deputy collector, as aforesaid, within the time hereinbefore provided, or shall neglect or refuse to deliver to said collector or deputy collector the duplicate of the schedule, list, or statement of such legacies, property, or personal estate, under oath, as aforesaid, or shall neglect or refuse to deliver the schedule, list, or statement of such legacies, property, or personal estate, under oath, as aforesaid, or shall deliver to said collector or deputy collector a false schedule or statement of such legacies, property, or personal estate, or give the names and relationship of the persons entitled to beneficial interest therein untruly, or shall not truly and correctly set forth and state therein

second class, the statute specifically makes the liability for taxation depend, not upon the mere vesting in a technical sense of title to the gift, but upon the actual possession or enjoyment thereof. By any fair construction the limitation as to possession or enjoyment expressed as to one class must be applied to the other, unless it be found that the statute, whilst treating the two as one and the same for the purpose of the imposition of the death duty, has yet subjected them

---

the clear value of such beneficial interest, or where no administration upon such property or personal estate shall have been granted or allowed under existing laws, the collector or deputy collector shall make out such lists and valuation as in other cases of neglect or refusal, and shall assess the duty thereon; and the collector shall commence appropriate proceedings before any court of the United States, in the name of the United States, against such person or persons as may have the actual or constructive custody or possession of such property or personal estate, or any part thereof, and shall subject such property or personal estate, or any portion of the same, to be sold upon the judgment or decree of such court, and from the proceeds of such sale the amount of such tax or duty, together with all costs and expenses of every description to be allowed by such court, shall be first paid, and the balance, if any, deposited according to the order of such court, to be paid under its direction to such person or persons as shall establish title to the same. The deed or deeds, or any proper conveyance of such property or personal estate, or any portion thereof, so sold under such judgment or decree, executed by the officer lawfully charged with carrying the same into effect, shall vest in the purchaser thereof all the title of the delinquent to the property or personal estate sold under and by virtue of such judgment or decree, and shall release every other portion of such property or personal estate from the lien or charge thereon created by this act. And every person or persons who shall have in his possession, charge, or custody any record, file, or paper containing, or supposed to contain, any information concerning such property or personal estate, as aforesaid, passing from any person who may die, as aforesaid, shall exhibit the same at the request of the collector or deputy collector of the district, and to any law officer of the United States, in the performance of his duty under this act, his deputy or agent, who may desire to examine the same. And if any such person, having in his possession, charge, or custody any such records, files, or papers, shall refuse or neglect to exhibit the same on request, as aforesaid, he shall forfeit and pay the sum of five hundred dollars: *Provided*, That in all legal controversies where such deed or title shall be the subject of judicial investigation, the recital in said deed shall be prima facie evidence of its truth, and that the requirements of the laws had been complied with by the officers of the Government.

to different rules. A consideration of the subsequent provisions of the section leaves no room for such a contention, since immediately following the designation of the two classes there are five distinct paragraphs, subjecting the passing of the property taxed in both classes to a different rate of tax, dependent upon the degree of relationship of the beneficiary to the decedent, and in each it is specifically provided that a tax is to be levied in respect only of a beneficial interest having a clear value. Moreover, the meaning of the statute, fairly to be deduced from the reiteration in each of the five paragraphs of the beneficial interest and clear value as the subject of the tax, is greatly strengthened by the inference to be drawn from the fact that nowhere in the section is there contained language referring to technical estates in personalty or treating them as subject of taxation, despite the absence of the right to immediate possession or enjoyment. And coming to consider section 30, relating to the collection of the duty or tax imposed by section 29, the meaning of section 29, as just indicated, is made clearer. Thus by section 30 it is provided that "every executor, administrator or trustee, before payment and distribution [of a legacy or distributive share] to the legatees, or any parties entitled to beneficial interest therein, shall pay to the collector of the district of which the deceased person was a resident the amount of the duty or tax assessed upon such legacy or distributive share." It also requires that the schedule, etc., to be furnished by an executor, administrator or trustee to a collector or deputy collector shall contain the name of each person having a beneficial interest in the property in the charge or custody of the executor, etc., with a statement "of the clear value of such interest."

These provisions harmonize with the meaning which we have ascribed to section 29, since they clearly import that the tax is to be deducted from a beneficial interest which the beneficiary was entitled to enjoy, and from which, before payment or distribution, a deduction of the duty was to be made.

In view of the express provisions of the statute as to possession or enjoyment and beneficial interest and clear value, and of the absence of any express language exhibiting an intention to tax a mere technically vested interest in a case where the right to possession or enjoyment was subordinated to an uncertain contingency, it would, we think, be doing violence to the statute to construe it as taxing such an interest before the period when possession or enjoyment had attached. And such is the construction which has been affixed to some state statutes, the text of which lent themselves more strongly to the construction that it was the intention to subject to immediate taxation merely technical interests, without regard to a present right to possess or enjoy. *Matter of Curtis,* 142 N. Y. 219, 222; *Matter of Roosevelt,* 143 N. Y. 120.

In the *Matter of Hoffman,* 143 N. Y. 327, the court was called upon to construe the meaning of a statute, enacted in 1892, providing that "all taxes imposed by this act shall be due and payable at the time of the transfer, provided, however, that taxes upon the transfer of any estate, property or interest therein limited, conditioned, dependent or determinable upon the happening of any contingency or future event, by reason of which the fair market value thereof cannot be ascertained at the time of the transfer as herein provided shall accrue and become due and payable when the persons or corporations beneficially entitled thereto shall come into actual possession or enjoyment thereof." Laws 1892, chap. 399, sec. 3. The court said:

"We are obliged to follow one of two lines of construction. We must open all the nice and difficult questions which arise under a will as to the vesting of technical legal estates, although future and contingent, and assess the tax upon what are in reality only possibilities and chances, and so complicate the statute with the endless brood of difficult questions which gather about the construction of wills; or we must construe it in view of its aim and purpose and the object it seeks to ac-

complish, and so subordinate technical phrases to the facts of actual and practical ownership. For taxation is a hard fact, and should attach only to such ownership, and may properly be compelled to wait until chances and possibilities develop into the truth of an actual estate possessed, or to which there exists an absolute right of future possession. I am not shutting my eyes to the statutory language, which is quite broad. The property taxed may be an estate 'for a term of years or for life or determinable upon any future or contingent estate,' or 'a remainder, reversion or other expectancy,' and the tables of mortality may be resorted to for the ascertainment of values. And yet, it is the 'fair market value,' the 'fair and clear market value,' which is to be assessed, and with the proviso that if that value cannot be at once ascertained, the appraisal is to be adjourned. I can scarcely imagine a contingency depending upon lives which mathematics could not solve by the doctrine of chances and the averages of mortality, and there could hardly be an adjournment unless upon some rare contingency having no averages, and the results in cases dependent upon lives might still leave the 'fair and clear market value' in doubt and yield sums which no sale in the market would produce."

So, also, the Supreme Court of Illinois, in construing an inheritance tax law of that State, containing language identical in some respects with that found in the act of Congress, observed in *Billings* v. *The People*, 189 Illinois, 472, 487:

"The tax imposed by section 1 of our statute is fixed upon the 'clear market value of the property received by each person' at the prescribed rate,—that is, as shown by the context, the clear market value of the beneficial interest so received. Surely, by such language it was not intended by the legislature that the courts should undertake to ascertain the clear market value of a mere possible interest which, from its very nature, could not have any market value, and which, for all practical purposes, such as taxation, is incapable of valuation. The courts, in order to enforce the immediate collection of such

taxes, as the statute seems to contemplate shall be done, cannot change the tax from one on succession to one on property; nor can they classify such remote and contingent interests, and fix the tax or rate of tax upon the whole class, as possibly the law-making power might do or provide for. No other course is left open in the practical administration of the statute than to postpone, as was done in this case, the assessing and collecting of the tax upon such remote and contingent interests as are incapable of valuation and as to which the rate and the exemptions cannot be determined."

And see also *Howe* v. *Howe*, 179 Massachusetts, 546, 550.

Indeed, in accord with its text and in harmony with the principles of construction expounded in the cases just cited, the act of 1898 was primarily construed by the officers charged with its administration as taxing only beneficial interests where the right to possess or enjoy had accrued. The rulings of the Internal Revenue Department to this effect were without deviation for several years.

The practice followed in carrying out the statute was illustrated by the assessment which was made in the case considered in *Knowlton* v. *Moore*, 178 U. S. 41, as exhibited in the schedule on page 44 of the report of that case. It was also by this construction that the tax in this case was originally assessed only upon the beneficial interest which was being enjoyed by Alfred G. Vanderbilt.

The change of construction was made because the administrative officers deemed it was required by the amendment of March 2, 1901, to the act of 1898: 31 Stat. 946. This is shown by a ruling made by the Commissioner of Internal Revenue on October 17, 1901, in which it was said (Treasury Decisions, Internal Revenue, vol. 4, p. 209):

"This office formerly held that the tax on reversionary interests was payable when the beneficiaries entered into the possession and enjoyment of their legacies.

"The amendment to section 30 of the war-revenue law, approved March 2, 1901, which went into effect July 1, 1901,

necessitated a change in this ruling, and on July 20, 1901, this office ruled that reversionary interests which are vested are taxable on their present worth."

The case therefore reduces itself to this: Did the amendatory act of 1901 enlarge the act of 1898 so as to cause that act to embrace subjects of taxation which were not included prior to the amendment? The amendatory act, so far as necessary to be considered for the purposes of this question, reënacted sections 29 and 30 of the original act. The amendments which the administrative officers decided made subject to taxation vested interests where the right of immediate possession or enjoyment had not accrued, and which had been treated as not taxable prior to the amendment were that the tax or duty should be due and payable in one year after the death of the person from whom the estate had passed, and that the executor, administrator or trustee should make return of the estate in his control within thirty days after taking charge thereof. Giving to these provisions their natural import, they imply only that a uniform period was fixed within which the obligation should arise of paying the tax authorized to be levied by the original act, that is, the obligation of paying the duty on each beneficial interest which in effect had vested in possession or enjoyment. The amendments, therefore, did not, in our opinion, justify the construction that Congress intended by adopting them to cause death duties to become due within one year as to legacies and distributive shares which were not capable of being immediately possessed or enjoyed, and were therefore not subject to taxation under the original act. This conclusion irresistibly follows when it is observed that no word is found in the amendatory act importing an intention to change the administrative construction which had theretofore prevailed from the beginning. On the contrary, the amendatory act reiterated without alteration the provisions found in the original act as to possession or enjoyment and beneficial interest and clear value. Indeed the amendatory act contained new provisions not expressly found in the original act,

supporting and adding cogency to the prior administrative construction, such as the proviso at the close of section 30, as follows:

"Any tax paid under the provisions of sections twenty-nine and thirty shall be deducted from the particular legacy or distributive share on account of which the sum is charged;" a provision plainly importing a practically contemporaneous right to receive the legacy or distributive share, and one which would be impracticable of execution if the tax was to be assessed and collected before the beneficiary and the rate of tax could certainly be ascertained.

Further elucidation as to the meaning of the amendatory act of 1901 is unnecessary in view of the subsequent legislation of Congress. By the act of April 12, 1902, 32 Stat. 96, section 29 of the act of 1898, as amended on March 2, 1901, was repealed to take effect on July 1, 1902. The repealing act, however, saved "All taxes or duties imposed by section 29 of the act of June 13, 1898, and the amendments thereof, prior to the taking effect of this act." On June 27, 1902, 32 Stat. 406, an act was adopted, the third section of which reads as follows:

"Sec. 3. That in all cases where an executor, administrator, or trustee, shall have paid, or shall hereafter pay, any tax upon any legacy or distributive share of personal property under the provisions of the act approved June thirteenth, eighteen hundred and ninety-eight, entitled 'An act to provide ways and means to meet war expenditures, and for other purposes,' and amendments thereof, the Secretary of the Treasury be, and he is hereby, authorized and directed to refund, out of any money in the Treasury, not otherwise appropriated, upon proper application being made to the Commissioner of Internal Revenue, under such rules and regulations as may be prescribed, so much of said tax as may have been collected on contingent beneficial interests which shall not have become vested prior to July first, nineteen hundred and two. And no tax shall hereafter be assessed or imposed under said act,

approved June thirteenth, eighteen hundred and ninety-eight, upon or in respect of any contingent beneficial interest which shall not become absolutely vested in possession or enjoyment prior to said July first, nineteen hundred and two."

In view of the provision for refunding we see no escape from the conclusion that this statute was in a sense declaratory of what we hold was the true construction of the act of 1898, and which, as we have seen, had prevailed prior to the amendment of March 2, 1901, and which was only departed from by the administrative officer under a misconception of the import of that amendatory act. There is no suggestion that any prior practice prevailed in the enforcement of the act of 1898, calling for the enacting of the refunding clause, except the mistaken construction placed on the amendatory act of 1901. The act of 1902 was, therefore, a legislative affirmance of the construction given to the act of 1898, prior to the amendment of 1901. It follows that the act of 1902 was, moreover, a legislative repudiation of the construction of the act of 1898, now insisted on by the Government. It is, we think, incontrovertible that the taxes which the third section of the act of 1902 directs to be refunded and those which it forbids the collection of in the future are one and the same in their nature. Any other view would destroy the unity of the section and cause its provisions to produce inexplicable conflict. From this it results that the taxes which are directed in the first sentence to be refunded, because they had been wrongfully collected on contingent beneficial interests which had not become *vested* prior to July 1, 1902, were taxes levied on such beneficial interests as had not become *vested in possession or enjoyment* prior to the date named, within the intendment of the subsequent sentence. In other words, the statute provided for the refunding of taxes collected under the circumstances stated and at the same time forbade like collections in the future.

In view of the text of the act of 1898 and the other considerations to which we have referred, we have not deemed it

necessary to advert to a contention made by the Government in argument, that the true meaning of the act of 1898 is shown by the administrative construction placed upon the act of July 1, 1862, levying legacy taxes, 12 Stat. 432, 485, of which in effect the act of 1898 was a reproduction.   It is undoubtedly true that both under the act of 1862 and the act of June 30, 1864, 13 Stat. 223, 285, there was an administrative construction by which vested interests, although unaccompanied with the right of immediate possession or enjoyment, were treated as at once taxable.   Without entering into details on the subject, we content ourselves with saying that it is also true that the correctness of that construction was in effect repudiated by legislative action (act of July 13, 1866, 14 Stat. 98, 140), and was, moreover, in substance, treated as unsound by the reasoning of the opinion in *Clapp* v. *Mason*, 94 U. S. 589.

Thus, by legislative action and judicial interpretation, it came to pass that the acts of 1862 and 1864 signified exactly what we now construe the act of 1898 to mean.   It was doubtless this concordance of legislative action and judicial interpretation concerning the earlier acts which caused the administrative department of the Government, when the act of 1898 was adopted, to interpret that act, not as the acts of 1862 and 1864 had been originally erroneously interpreted in administration, but in accord with the subsequent legislative and judicial construction which had been placed upon the language of those acts, and which language in effect was repeated in the act of 1898.

Concluding, as we do, that there was no authority under the act of 1898 for taxing the interest of Alfred G. Vanderbilt, given him by the residuary clause of the will, conditioned on his attaining the ages of thirty and thirty-five years, respectively, it is unnecessary to determine whether such interest was technically a vested remainder, as claimed by counsel for the Government.   In passing, however, we remark that in a case recently decided by the Court of Appeals of New York, *Matter of Tracy*, 179 N. Y. 501, it was declared

that such interest was a contingent and not a vested re-mainder.

Coming to apply the construction which we have given the statute to the solution of the questions propounded by the Court of Appeals, it follows that the first, second and fourth questions are unnecessary to be answered, and the third question should be answered in the negative.

*And it is so ordered.*