### SHANLEY v. HEROLD.

(Circuit Court, D. New Jersey. October 20, 1905.)

1. INTERNAL REVENUE—LEGACY TAX—VESTED INTEREST.

A bequest to a person when he reaches a certain age is contingent, and not taxable under War Revenue Act June 13, 1898, c. 448, Schedule B, §§ 29, 30, 30 Stat. 464, 465, as amended by Act March 2, 1901, c. 806, §§ 10, 11, 31 Stat. 946 [U. S. Comp. St. 1901, pp. 2307, 2308], before such age is reached; but, where the legatee is in the meantime to receive the income therefrom, he has a present beneficial interest which is subject to the tax, to be based on a computation of the amount he will receive before reaching such age or during his expectancy of life, if shorter than such time.

2. SAME.

A testator by his will left his residuary estate in trust until the death or remarriage of his widow, on the happening of either of which events it was to be divided equally between his three sons. Until such time the income was to be collected by the trustees, and on a stated day each year, after deducting the cost of administration, divided equally between the widow and sons, share and share alike. Held, that the reversionary interest of the sons in the corpus of the estate was not subject to tax under War Revenue Act June 13, 1898, c. 448, Schedule B, §§ 29, 30, 30 Stat. 464, 465, as amended by Act March 2, 1901, c. 806, §§ 10, 11, 31 Stat. 946 [U. S. Comp. St. 1901, pp. 2307, 2308], because such interests were not "absolute-

ly vested in possession or enjoyment" prior to July 1, 1902, within the meaning of Act June 27, 1902. c. 1156, 32 Stat. 406 [U. S. Comp. St. Supp. 1905, p. 637], the widow being then living and unmarried, and for the further reason, as to the one-fourth part from which the widow received the income, that the statute requires the tax to be deducted from the particular legacy or distributive share on account of which the same is charged, and the widow's interest is not subject to tax nor deduction on account of the same. *Held*, also, that the interest of the sons in the income during the continuance of the trust was not taxable, except as to the amount actually received prior to July 1, 1902, because the provision of the will that the trust should terminate in the event of the widow's remarriage rendered the amount of such income, and hence its "clear value," undeterminable.

At Law. Trial to court, a jury having been waived pursuant to statute.

Lintott, Johnson & Capen, for plaintiff.

John B. Vreeland, for defendant.

CROSS, District Judge. This action is brought to recover legacy taxes assessed under the war revenue act, the same being entitled "An act to provide ways and means to meet war expenditures and other purposes," approved June 13, 1898, (30 Stat. 448, c. 448), as amended March 2, 1901 (31 Stat. 938, c. 806, § 1 [U. S. Comp. St. 1901, p. 2286]), which were paid by John F. Shanley, executor and trustee under the last will of Bernard M. Shanley, deceased, who died March 19, 1900, leaving personal estate of a clear value of $5,589,668.14. Testator's widow is still living and was 40 years of age at the time of his death.

The legacies which were taxed passed under the following paragraphs of decedent's will:

'Fourthly. I give and bequeath to my three sons, William Carleton, James Roosevelt and Bernard M., Jr., each the sum of one hundred thousand dollars; and I give and bequeath to my said three sons all my stock in the B. M. & J. F. Shanley Company, share and share alike.

"Fifthly. I give and bequeath the sum of one hundred thousand dollars to my executor hereinafter named, in trust nevertheless, to invest the same in safe securities and to expend the income thereof for the support, maintenance and education of my grandson, Joseph Sanford Shanley until he shall arrive at the age of twenty-one years, when the said sum of one hundred thousand dollars shall be his and shall be paid to him accordingly. If my said grandson shall not have arrived at the age of twenty-one when the distribution of my estate is to be effected as hereinafter provided, that is, upon the death or remarriage of my wife, then I direct that my executor shall hold in trust the further sum of one hundred and fifty thousand dollars and to pay the income thereof for the support, maintenance and education of my said grandson, until he shall arrive at that age, and, upon his reaching that age and the time of distribution of my estate having arrived as aforesaid, the said sum of one hundred and fifty thousand dollars shall be his and be paid to him. If my said grandson should die before attaining the age of twenty-one years, the said bequests for his benefit of one hundred thousand dollars and one hundred and fifty thousand dollars shall lapse, revert to and become part of my general estate. If he arrives at that age he shall have tne first-mentioned sum immediately thereupon, and the other sum, one hundred and fifty thousand dollars, when the final distribution of my estate is made as herein provided."

"Seventhly. I direct that the net income of all the residue and remainder of my estate, after the payment of all necessary and proper expenses and

charges on account of the same, be annually divided, on the twenty-fifth day of January of each year, between my wife, and my three sons, share and share alike, each receiving one-fourth thereof, until the death or remarriage of my said wife, upon the happening of either of which events all her right, title and interest in my estate shall cease. And, thereupon, I direct that all the rest, residue and remainder of my estate, real and personal, subject to the provisions above written for the benefit of my grandson, shall be distributed and divided among my said three sons share and share alike."

The taxes paid, and for the return of which suit is brought, amount to $97,936.63, as shown by the schedule annexed to the declaration, and were paid by the said executor and trustee under protest. The legality of the taxes paid under the foregoing paragraphs of said will will be discussed in the order of said paragraphs.

First, as to the taxes paid under the item of said will denominated "fourthly." Under this paragraph each son was given the sum of $100,000 and one-third of testator's stock in the B. M. & J. F. Shanley Company, which one-third interest was valued at $18,333.33, making the total value of the legacy passing to each son under this item of the will $118,333.33. No question is made that this amount was properly taxed to each son, but the rate of taxation is questioned, and as the rate must depend upon the sum of all the legacies bequeathed by the will to each son, this question will be held in abeyance until after a discussion of the other legacies passing to them; we shall then be able to ascertain the sum of such legacies, and apply the rate provided by law.

Under the item "fifthly" of said will, two legacies were given to a grandson, Joseph Sanford Shanley, of $100,000 and $150,000, respectively. Counsel for the plaintiff contends that these legacies are not taxable, because they are both technically contingent legacies, and the legatee is not in the absolute possession or enjoyment thereof. As to the legacy of $150,000, counsel for the defendant admits that under the rule laid down in Vanderbilt v. Eidman, 196 U. S. 480, 25 Sup. Ct. 331, 49 L. Ed. 563, no tax could be legally assessed thereon, and we regard such admission as entirely warranted, since he was not in the possession or enjoyment of either the income or principal of said fund, and also because the question of his ever deriving any beneficial interest from said legacy was purely contingent, as will readily be seen from reading the paragraph.

As to the principal of the other legacy of $100,000, we regard that also as contingent. The right of the legatee to possess it will depend upon his living to the age of 21 years. By the will it is provided that the said sum of $100,000 shall be held in trust by the executor until the said grandson shall arrive at said age, "when the said sum of one hundred thousand dollars shall be his and shall be paid to him accordingly"; and again, "if he arrives at that age he shall have the first mentioned sum [$100,000] immediately thereupon." That this legacy was contingent seems to be settled by the case of Gifford v. Thorn, 9 N. J. Eq. 702, where it was held that a bequest to a party when he arrives at the age of 21 years, to him and his heirs forever, is a contingent legacy. The Court of Errors and Appeals, in delivering its opinion, used this language:

"Now, it has been repeatedly held, and seems at this day, to be settled law, that, where the bequest made to a legatee is in these words or words of a similar meaning, without being controlled by the context to the will, they imply a condition precedent, to wit, that the legatee live to that age, and consequently the legatee does not take a vested interest in the legacy until 21. 'I give and bequeath to A. B. at the age of twenty-one,' or 'as he arrives at twenty-one,' or 'provided he lives to be twenty-one,' or 'in case of his arriving at twenty-one,' or 'when he arrives at the age of twenty-one,' have all been held to be contingent legacies."

The foregoing decision has never been questioned, but, on the contrary, has been cited and approved in very many cases, among them Post v. Herbert's Executors, 27 N. J. Eq. 540; Howell v. Green, 31 N. J. Law, 571; Neilson v. Bishop, 45 N. J. Eq. 473, 17 Atl. 962. As has already been indicated, there are no words in the context of the Shanley will which require any other or different construction than the above. We think, therefore, that the principal of the legacy of $100,000 was not taxable. Notwithstanding this conclusion, however, we think that the legatee had a present beneficial interest in the legacy which was taxable. At the death of the testator he was 7 years of age, and he had a life expectancy of nearly 40 years. The trustee who held the legacy was directed to expend the income thereof for his support, maintenance, and education until he should arrive at the age of 21 years, and, since his life expectancy extended beyond that period, he would seem to have, and to be in the possession and enjoyment of, a present beneficial interest in said fund for the period of 14 years, being the difference between his age at the death of the testator and the time when he would reach the age of 21. We estimate the total taxable value of the legacy therefore at $42,252.48, which value should be taxed under the act at the rate of $1.12½ per 100, making the tax payable thereon $475.34.

We will next consider the legacies passing under item "seventhly" of the will. This paragraph directs that the net income of all the residue and remainder of testator's estate, after the payment of all taxes and proper expenses and charges on account of the same, be annually divided on the 25th day of January of each year, between his wife and three sons, one-fourth to each, until the death or remarriage of his wife. Upon the happening of either of such events, the rest, residue, and remainder was to be distributed between his three sons, share and share alike. Under this paragraph the beneficial interest of each son was valued for taxation as follows: $757,842.30¼ of income of residue during life of widow, $618,703.25 ⅓ of reversionary remainder at death of widow. The reversionary interest just referred to was the entire residue of the estate at the death of the widow, including the part of which she had the income. We think it entirely clear that the one-fourth part of which the widow has the use during her life or widowhood has not passed to the sons, and is not taxable under the act referred to. This view is supported by the opinion of the Supreme Court in Mason v. Sargent, 104 U. S. 689, 26 L. Ed. 894. In that case the decedent's personal estate upon which the tax was levied was given to trustees for the use of his widow for life, and at her death to his children absolutely. The remainder was taxed prior to the death of the

widow, the tax was paid under protest, and claim was duly made for its return, for the reason that the property did not vest in possession in the remaindermen until the death of the widow. The tax was imposed pursuant to section 124 of the act of June 30, 1864 (30 Stat. 285, c. 173), and the amendment to said act of July 13, 1866 (30 Stat. 98, c. 184). These sections are practically the same as those found in the act under which the taxes now being considered were assessed. Both the act of 1864 and the act of 1898 contain clauses exempting from taxation all legacies or property passing by a will, or by the law of any state or territory to the husband and wife of the person who died possessed thereof; and both contain clauses that the taxes to be paid thereunder shall be deducted from the particular legacy, or distributive share, on account of which the same is charged. In the Mason Case the court held that:

"The tax was illegally demanded and collected. * * * The subject of the tax is the interest of the legatees in remainder; but it is not taxable as a remainder, for by the terms of the law it does not become a subject of taxation until the right accrued to reduce it to possession. Until then it is expressly exempt from taxation."

The conclusion reached in that case was inevitable in view of the fact that the wife's interest in the estate could not be taxed, and that the law directed the tax to be paid from the particular legacy or distributive share on account of which the same was charged. Any other result would have required the tax to be deducted from the corpus of the estate, while it was in the hands of the widow, and would have proportionately depleted her income; and the same result would happen in the presnt case. The facts in the two cases are quite alike, save that in the Mason Case the widow had the income from the entire estate, while in the present case she has the income from one-fourth of the estate only. We conclude, therefore, that the reversionary interest in said one-fourth part was not taxable under the act of 1898 and its supplement, and would not have become taxable had the act remained unrepealed until after the death or remarriage of the widow.

Before considering the liability to taxation of the remaining three-fourths of the reversionary interests, we will advert briefly to some of the points which we deem were decided in the Vanderbilt Case. Without adhering strictly to the language of the court, they are as follows: (1) That the liability for taxation depends not upon the mere vesting in a technical sense of title to the gift, but upon the actual possession or enjoyment thereof. (2) A mere technically vested interest, where the right of possession or enjoyment is subordinated to an uncertain contingency, cannot be taxed before the period when possession or enjoyment has attached. (3) The right to receive a legacy, and the duty to pay the tax, are practically contemporaneous. (4) The taxes which the act of 1902 directs to be refunded, and those which it forbids to be collected in the future, are one and the same in their nature, and the taxes directed by said act to be refunded are such as had been assessed or imposed upon, or in respect to contingent beneficial interests which had not become absolutely vested in possession or enjoyment, prior to July 1, 1902.

The proposition then presented for solution is whether, applying the

principles above laid down, the reversionary interests of the three sons in the residue of the estate were absolutely vested in possession or enjoyment prior to July 1, 1902, so as to make them liable to taxation. Technically speaking, they were vested estates; but under the Vanderbilt decision that of itself is immaterial and does not answer the question as to whether such beneficial interests had become absolutely vested in possession or enjoyment. "The word absolutely is an appropriate expression for the exclusion of the idea that an estate is either partial or conditional." 1 Am. & Eng. Enc. of Law (2d Ed.) p. 208. In Rapalje & Lawrence's Law Dictionary, "absolutely" is defined as "complete; final; perfect; unconditional; unrestricted; an estate without condition or qualification." A beneficial interest, to be taxable, must not only be vested in possession or enjoyment, but it must be absolutely so vested. This is a controlling word, and, as applied to property and property rights, means unqualified ownership; that is to say, qualified ownership in property is not absolute ownership. Absolute ownership is perfect ownership, without condition and without restriction or limitation. The reversionary interest of the sons in the property in question is held by a trustee, and is to be so held until the widow shall die or remarry. They have no present legal title to, or control over, the same. They can only receive a portion of the interest yearly, and that upon a fixed date. The share upon which the widow receives interest is in the same fund as the shares upon which they receive interest. Interest is accumulated by the trustee upon the entire fund, until the date when it is to be divided, and then, before it is divided, the charges and expenses of administration are deducted. Since, then, the legatees did not have the full and complete possession and enjoyment of their reversionary interests, and as the time when they will have such full and complete possession and enjoyment has not yet arrived, and the period when it will arrive is uncertain, we fail to see how such interests are taxable. They do not seem to us to be absolutely vested in the legatees in possession or enjoyment. The only present right they have is to a portion of the income. True, they can assign their interests, but only subject to the burdens and limitations imposed by the will, and at a correspondingly depreciated value. Moreover, since the duty to pay the tax and the right to receive the legacy are held to be practically contemporaneous, and the legacies are not yet payable, we think it must be held that the taxes also are not payable. We therefore hold that the taxes assessed upon the reversionary remainders were illegally assessed.

A further tax was imposed upon each of the sons for his interest under the seventh paragraph of the said will, as follows: "$757,842.30 one-quarter of income of residue, during the life of the widow." This assessment is made upon what was regarded as the present right of the legatees to receive three-fourths of the income of the estate until the death of the widow. But we fail to see any method provided in the act by which a valuation of such interest could, under the circumstances, be determined. It was determined undoubtedly by ascertaining the life expectancy of the widow, which could be arrived at with sufficient definiteness for most purposes by means of life tables. But another important contingency entered into the proposition which was not considered.

The interests in question of the legatees were determinable not only by the death of the widow, but also by her remarriage. It is apparent therefore that the interests might terminate at any time, and that there is consequently no way to fix or determine their present value. No tables have ever been calculated which will show the time, when, if ever, a widow will remarry. Dunbar v. Dunbar, 190 U. S. 345, 23 Sup. Ct. 757, 47 L. Ed. 1084. Congress might possibly have established an arbitrary rule of valuation in such cases; but it has not done so, and it is useless to speculate as to whether or not such legislation would have been valid had it been enacted. There must be, however, some method by which these estates could be valued with reasonable certainty, if this taxation is to be supported. No taxation can rest upon a haphazard or guess-work valuation, but that in our judgment is the only foundation upon which the property interests under consideration were taxed. Their clear value was not and could not have been ascertained. Under the circumstances we think the only method open to the government was to tax the income received by the legatees when, and as, it should be received. The evidence taken at the hearing discloses that each son received, prior to July 1, 1902, two annual payments amounting together to $87,279.41. We think the tax to this extent was properly imposed.

Before concluding we will, as briefly as may be, advert to the contention of the government that the tax levied on the income of the life of the widow and on the reversionary remainder amounted together to only the clear value of the legacy at the death of the testator, and that, if the tax imposed upon the income should prove too large, by reason of the remarriage of the widow, the tax imposed upon the reversion would be correspondingly too small, and, since the same person was entitled to both the income and the remainder, the tax as a whole was just. This reasoning is plausible, but runs counter to propositions which we regard as settled by Vanderbilt v. Eidman. The valuation of both the income and the reversion were necessarily based upon contingencies, some only of which were considered, while others were ignored. Valuations thus reached must necessarily be uncertain. The result of the method adopted was to value the legacy as if it were already vested absolutely in possession or enjoyment. No other or different valuation could have been placed upon the legacy, had it been payable immediately. If it were impossible to ascertain the present value of the reversion because of the possibility of the widow's remarriage, then it was equally impossible to value the income thereof. The government foresaw the difficulty, and attempted to overcome it by ignoring the possibility of remarriage, and fixing the same valuation upon the income and reversion that it would have fixed, had the legacies been vested in possession and enjoyment and payable immediately. We think this course was unwarranted.

Accordingly we find that each of the sons was taxable on a total valuation of $205,612.74, at a rate of 1½ per cent., upon $118,333.33 of that amount, however, the tax was paid without protest, and that the grandson was taxable upon the beneficial interest accruing from the receipt of the income on the legacy of $100,000, from the death of the testator,

when his age was 7, until he should become 21, the present value of which was $42,252.48. This sum is taxable at a rate of $1.12½ per $100 less these amounts. We think the taxes paid should be returned, with interest from February 6, 1903. Erskine v. Van Arsdale, 15 Wall. 75, 21 L. Ed. 63; Redfield v. Bartels, 139 U. S. 694, 11 Sup. Ct. 683, 35 L. Ed. 310. The following statement shows the amount for which judgment should be entered, calculated upon the above basis:

| | | | |
|---|---|---|---|
| Amount paid under protest | | | $97,936 65 |
| Amount payable on share of grandson valued at $42,-252.48 at 1.12½ per centum | $ 475 34 | | |
| Amount payable on income received by each son, $87,-279.41, at 1.50, $1,309.19, or for the three sons | 3,927 57 | 4,402 91 | |
| Amount overpaid and to be refunded | | | $93,533 74 |
| Interest thereon from February 6, 1903 | | | 15,052 41 |
| **Amount for which judgment will be entered** | | | **$108,586 15** |