UNION TRUST CO. OF SAN FRANCISCO v. LYNCH, Internal Revenue Collector.

(Circuit Court, N. D. California. August 23, 1906.)

No. 13,339.

INTERNAL REVENUE—LEGACY TAXES—INTERESTS VESTED IN POSSESSION.

Where the children and legatees of a testator were to receive only the income from their respective shares in the estate until they reached stated ages, which did not occur in any case until after July 1, 1902, when the repeal of section 29 of the war revenue act of June 13, 1898, c. 448, 30 Stat. 464 [U. S. Comp. St. 1901, p. 2307] took effect, under Act June 27, 1902, c. 1160, § 3, 32 Stat. 406 [U. S. Comp. St. Supp. 1905, p. 450] which provides that no tax shall be assessed under said section 29 in respect of any contingent beneficial interest which shall not become absolutely vested in possession or enjoyment prior to July 1, 1902, and that any such tax previously collected shall be refunded, the interest of such legatees for the purpose of taxation was the value of the income received by each respectively from the estate prior to said July 1, 1902, which was subject to the tax only in case it amounted to $10,000, and in computing such amount allowances made by the probate court for their support pending settlement of the estate cannot be included.

On Demurrer to Complaint.

MORROW, Circuit Judge (orally). This is an action to recover from the defendant, the Collector of Internal Revenue for this District, certain legacy taxes that have been paid by the plaintiff in the case under protest, and with respect to which application has been made to the Commissioner of Internal Revenue to refund the taxes, and such application has been denied.

The taxes were levied upon the legacies provided by the will of Richard H. Follis, deceased, who died in this city on May 31, 1900, leaving personal estate valued at $806,935.12, less certain expenses allowed by law amounting to $28,443.84. The clear net value of the personal estate was ascertained to be $778,491.28. The estate was left in trust for five children, namely, Mrs. Margaret De Vecchi, the wife of Dr. De Vecchi, James H. Follis, Richard H. Follis, Lillian Mary Griffin, and Clarence George Follis.

The first decree of distribution in this estate was entered on No-

vember 16, 1900, and the final decree was entered June 26, 1901. Dividing this personal estate into five equal parts as provided in the will, made a legacy for each of the children amounting to $155,698 and 25 cents or 26 cents—more than 25 cents, and less than 26 cents—so that for two of the heirs the shares were determined to be $155,698.-25, and for three of the heirs $155,698.26. The Commissioner of Internal Revenue has made three assessments with respect to this estate. The first assessment is dated June 15, 1901, and amounted to $1,349.88. In that assessment Margaret De Vecchi was assessed $173.01, James H. Follis $178.33, Richard H. Follis $346.03, Lillian Mary Griffin $321.46, and Clarence G. Follis $331.02, making the amount stated $1,349.98. This assessment was based upon the following estimated value of each share of the estate as an annuity from the date of the decree of distribution on June 26, 1901, to the time when the particular heir received his or her share of the estate.

The will provided that the trustees were empowered:

"To pay the net proceeds of the income, rents, issues, and profits of said trust quarterly, upon the first day of each and every quarter of the year equally, share and share alike, to all of the children namely, Margaret, James, Richard, Mary, and George, up to and until such time as each of them shall respectively attain the ages following; that is to say: Until said Margaret, now wife of Dr. De Vecchi, shall attain the age of thirty-nine years; until said James H. Follis shall attain the age of 33 years; until years; until said James H. Follis shall attain the age of thirty-three years; until the said Richard H. Follis shall attain the age of thirty-one years; until said Mary Lily Follis shall attain the age of twenty-nine years, and until said George Clarence Follis shall attain the age of twenty-seven years."

The whole of the personal estate was then to be distributed to the heirs when they arrived at the ages named; that is to say, when Margaret De Vecchi arrived at the age of 39 years, the estate was to be appraised and divided into aliquot parts corresponding to the number of children, and she was to be given her aliquot part in severalty and in specie as far as the same might be practicable, but in case there was not in specie the exact amount to be given her the balance could be given her in money. When the next heir arrived at the age mentioned in the will, the property was to be again appraised, and again divided in the same way, and this second heir was to receive his share in the same way as the first. So the distribution was to proceed until the very last, except when the last heir arrived at the age specified in the will, it was not necessary to have the estate appraised, because the property then left was his share, and it was to be handed over to him, the others having received their share.

The Commissioner of Internal Revenue, in June, 1901, determined the then present value of this estate to each of the heirs as an annuity until the time they should arrive at the age specified in the will. In the case of Margaret De Vecchi, the time that was to elapse from the time of the making of this assessment—the assessment was made to correspond with the date of that decree of distribution on June 26, 1901—the time that would elapse between June 26, 1901, and the time when she should reach the age of 39 years, which would be July 24, 1905. This period of time would be 4 years and 28 days; the case of James H. Follis, the time that would elapse between the entry of the decree on June 26, 1901, and the time his share of the estate was

distributed to him would be 4 years and 71 days; in the case of Richard H. Follis, the time that would elapse between the entry of the decree on June 26, 1901, and the distribution of the estate to him on February 6, 1907, would be 5 years and 225 days; in the case of Lillian Mary Follis, the time that would elapse between the entry of the decree on June 26, 1901, and the distribution of the estate to her on August 28, 1906, would be 5 years and 63 days; and in the case of Clarence George Follis, the time that would elapse between the entry of the decree on June 26, 1901, and the distribution of the estate to him on October 30, 1906, would be 5 years and 125 days. Upon the period of time stated in each case, the Commissioner of Internal Revenue made an estimate of the value of each one of those interests as of the date of June 26, 1901, as an annuity to each, and the assessment was made accordingly, and as I have just stated, amounted in the aggregate to $1,349.88.

On August 6, 1901, the Commissioner of Internal Revenue made a second assessment against this estate. This assessment was based on the total amount that would be ultimately distributed to the legatees, and this assessment was added to the first assessment; that is to say, the two assessments together amounted to the sum which the Commissioner determined to be the amount assessable under his revised construction of the act. This again was an assessment upon what was deemed to be the value of the annuities to each one of the heirs during the period that I have just mentioned; that is to say, the period that elapsed between the time of the entry of the decree of distribution and the time when each of them became entitled to the estate. This assessment amounted to $136.84 in respect to each one of the heirs, or $684.20 in the aggregate for all the heirs in addition to $1,349.88, the amount of the first assessment.

On October 18, 1901, the Commissioner of Internal Revenue made a third assessment against each one of these heirs. This assessment amounted to $9,341.87, and against each one of the heirs $1,868.37. This third assessment was based upon the value of the entire corpus of the estate as it then stood; in other words, the Commissioner of Internal Revenue determined what on June 26, 1901, was the value of the entire corpus of the estate of each one of the heirs at that date, and levied an assessment upon the estate accordingly, and upon the interest of each one separately. This third assessment was in addition to the first two assessments. The total amount of all three assessments was $11,375.93. This tax was paid by the executors of the estate to the Collector of Internal Revenue under protest.

The case of Vanderbilt v. Eidman afterwards came up before the Supreme Court of the United States, and the opinion of the Supreme Court is reported in 196 U. S. 480, 25 Sup. Ct. 331, 49 L. Ed. 563. It is a case somewhat similar to this case. Cornelius Vanderbilt provided in his will that his son Alfred G. Vanderbilt, when he arrived at the age of 21 years, should receive the net income of the residuary personal estate left by the testator until he arrived at the age of 30 years, when he should receive half the estate, and the remainder of the estate when he reached the age of 35 years. The amount of the personal estate was $18,972,117.46. "The right of Alfred G. Vanderbilt

to the beneficial enjoyment, as provided in the will, until he became 30 years of age, was appraised at $5,119,612.43, and upon this sum the executors paid a death duty under sections 29 and 30 of the acts of June 13, 1898, c. 448, 30 Stat. 464, 465 [U. S. Comp. St. 1901, pp. 2307, 2308] at the rate of 2¼ per cent., the tax amounting to $115,191.- 28. After payment of this amount and subsequently to the passage on March 2, 1901, c. 806, 31 Stat. 938 [U. S. Comp. St. 1901, p. 2286] of an amendment to the war revenue act of June 13, 1898, c. 448, 30 Stat. 448, the Commissioner of Internal Revenue, considering that by that amendment Alfred G. Vanderbilt had become immediately liable for a tax on his right to succeed to the whole residue if he lived to the ages of 30 and 35 years respectively, assessed a death duty based upon that hypothesis. In making this assessment, as by the mortality tables it was shown that Alfred G. Vanderbilt had a life expectancy beyond the ages of 30 and 35 years, the Commissioner assessed the interest as a vested estate equal in value to the sum of the entire residuary estate, viz., $18,972,117.46. Upon this valuation a tax was levied of 2¼ per cent., producing $426,872.64. On this amount, however, credit was allowed for the sum of the tax previously paid, leaving the balance due $311,681.36."

The Supreme Court of the United States had before it this statute upon which the assessment is made in this case; that is to say, sections 29 and 30 of the act of June 13, 1898, c. 448, "An act to provide ways and means to meet war expenditures and other purposes." This act is found in 30 Statutes at Large, c. 448, and the section under which this assessment is levied is on pages 464 and 465. Section 29 of that act provides:

"That any person or persons having in charge or trust, as administrators, executors or trustees, any legacies or distributive shares arising from personal property, where the whole amount of such personal property as aforesaid shall exceed the sum of ten thousand dollars in actual value, passing, after the passage of this act, from any person possessed of such property, either by will or by the intestate laws of any state or territory, or any personal property or interest therein, transferred by deed, grant, bargain, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainer, to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, shall be and hereby are, made subject to a duty or tax, to be paid to the United States, as follows—that is to say. * * *"

Then the act specifies the different rates of taxation that are imposed with respect to the different heirs that may be entitled to the estate. In this Vanderbilt Case, the Supreme Court also had before it the repealing act, "An act to repeal war-revenue taxation, and for other purposes." Section 7 of that act (Act April 12, 1902, c. 500, 32 Stat. 97 [U. S. Comp. St. Supp. 1905, p. 446]) provided:

"That section four of said act of March second, nineteen hundred and one, and sections six, twelve, eighteen, twenty, twenty-one, twenty-two, twenty-three, twenty-four, twenty-five, Schedule A, Schedule B, sections twenty-seven, twenty-eight, and twenty-nine of the act of June thirteenth, eighteen hundred and ninety-eight, and all amendments of said sections and schedules be, and the same are hereby repealed."

Section 30 was not repealed, as section 30 relates to the collection of the tax. Again, the act of June 27, 1902, c. 1160, to be found in 32

Stat. 406 [U. S. Comp. St. Supp. 1905, p. 450] has a further provision relating to the repeal of this tax, section 3 of that act, which provides as follows:

"That in all cases where an executor, administrator, or trustee shall have paid, or shall hereafter pay, any tax upon any legacy or distributive share of personal property under the provisions of the act approved June thirteenth, eighteen hundred and ninety-eight, entitled 'An act to provide ways and means to meet war expenditures, and for other purposes,' and amendments thereof, the Secretary of the Treasury be, and he is hereby, authorized and directed to refund, out of any money in the treasury not otherwise appropriated, upon proper application being made to the Commissioner of Internal Revenue, under such rules and regulations as may be prescribed, so much of said tax as may have been collected on contingent beneficial interests which shall not have become vested prior to July first, nineteen hundred and two. And no tax shall hereafter be assessed, or imposed under said act approved June thirteenth, eighteen hundred and ninety-eight, upon or in respect of any contingent beneficial interest which shall not become absolutely vested in possession or enjoyment prior to said July first, nineteen hundred and two."

The question in the Vanderbilt Case was whether the interest of Alfred G. Vanderbilt was liable under the statute to tax as a residuary legatee of the personal estate of Cornelius Vanderbilt. The question that was propounded by the Circuit Court of Appeals to the Supreme Court of the United States for determination was in this form:

"Did sections 29 and 30 of said act authorize the assessment and collection of a tax with respect to any of the rights or interests of Alfred G. Vanderbilt as a residuary legatee of the personal estate of Cornelius Vanderbilt under the 17th clause of the will, with the exception of his present right to receive the income of such estate until he attained the age of 30 years, prior to the time when, if ever, such rights or interests shall become absolutely vested in possession or enjoyment?"

The Supreme Court in its opinion discusses the question, cites authorities, and determines that the interest of Alfred G. Vanderbilt was not liable to this tax; that under the repealing act he did not have the absolute vested possession, or the enjoyment of this estate, prior to the 1st day of July, 1902, when the repealing act went into effect. Under this decision of the Supreme Court the Commissioner of Internal Revenue refunded the tax collected on the second and third assessments in the Follis estate, conceding that under this decision the Follis heirs did not become absolutely possessed or have the enjoyment of the estate until long after this repealing act went into effect. But there was one question in this estate of Vanderbilt that was left open, and is left open, by the very question propounded to the Supreme Court by the Circuit Court of Appeals, and is the exception stated in the question as follows:

"With the exception of his present right to receive the income of such estate until he attains the age of 30 years."

It is under that exception to the question propounded to the Supreme Court of the United States that the government contends in this case that the heirs of the Follis estate were properly assessed for the value of their annuity at the time of the entry of the decree, and it is upon that ground that the Commissioner of Internal Revenue has refused to refund this tax, and the Collector of Internal Revenue defends the present suit. In the Vanderbilt Case it will be observed,

however, that this tax was assessed upon the value of an annuity of much more than $10,000. Below the sum of $10,000 all legacies are exempt under this law. If the legacies do not amount to $10,000 there is no tax. In the Vanderbilt Case there was no question about the amount of the income, and the question was not raised by the Vanderbilt beneficiary. It was largely in excess of $10,000. He did not seem to have raised any controversy as to whether the income was assessable as an annuity. He paid it, and made no application to have it refunded.

The question before this court is whether the Follis heirs are liable for this tax upon their legacies as estimated and determined by the Commissioner of Internal Revenue under the law as determined in the Vanderbilt Case. I have been particular to refer to the time when this estate was to run with respect to each heir before it was to be distributed. It runs from 4 years and 28 days in the case of Margaret De Vecchi to 5 years and 225 days—nearly six years—in the case of Richard H. Follis, and it is upon such periods of time this assessment was levied. In the case of James H. Follis the Commissioner of Internal Revenue found that he would have an income from this estate for a period of 5 years and 225 days, and the Commissioner assessed him for the value of an annuity during that time. Of course, for such a period the valuation amounted to over $10,000. But here is the difficulty about that assessment: The tax did not run for any such time. The tax was repealed on July 1, 1902, and after the decree was entered in this case on June 26, 1901, the law itself was only in existence 1 year and 4 days, and this statute says specifically, that when it is not vested at the time the repealing statute went into effect no tax shall be collected; that is, the specific command of this statute is that unless a person receives a legacy of more than $10,000 which vests in the absolute possession and enyoyment of such person prior to the passing of this repealing act there can be no tax. That is a specific, direct, positive, unqualified direction of the statute, which the court cannot evade.

Now, then, did these heirs receive from this estate the sum of $10,000 during 1 year and 4 days between June 20, 1901, and July 1, 1902? They did not. There is no question about this fact. Moreover, the complaint itself alleges specifically that the heirs did not receive the sum of $10,000 prior to July 1, 1902. That must be taken as an admitted fact, because we are now considering a demurrer to the complaint which admits the facts alleged in the complaint, but it can be very easily determined from the figures contained in the complaint and the exhibits attached thereto concerning the value of the estate and the income derived therefrom.

In addition to that, paragraph 9 of the complaint alleges:

"That all of the taxes aforesaid which have been collected by the defendant were collected upon the contingent beneficial interests of Margaret De Vecchi, James H. Follis, Richard H. Follis, Jr., Lillian Mary Griffin and Clarence G. Follis, none of which interests had become vested prior to July 1, 1902, and none of which interests have, since said decree of distribution or since the death of Richard H. Follis, as aforesaid, become vested, and none of which interests have at any time become vested in possession or enjoyment."

Then paragraph 11 charges:

"That the amount received by the said beneficiaries and each of them prior to July 1, 1902, was and is less than the sum of $10,000; that is to say, each of said children has received and had vested in them from said estate and trust, prior to July 1, 1902, the following approximate sums: Margaret De Vecchi $8,000, James H. Follis, $8,000, Richard H. Follis, Jr., $8,000, Lillian Mary Griffin $8,000, and Clarence G. Follis $8,000."

In the face of such allegations of the complaint, and upon the statement of the facts as they are contained in the complaint, and set forth in this assessment here, it is clear that prior to July 1, 1902, these heirs did not receive into their absolute possession or enjoyment any sum amounting to $10,000, and under this statute it seems to me it is beyond any question that they are not liable to any assessment. The only way they can be made liable would be to determine that on the 26th of June, 1901, and from that date on, during these successive five years, the income that was to be paid to each of them from this estate would in the aggregate have amounted to such a sum, and that on June 26, 1901, under these actuary tables, such income would be of the value of more than $10,000. In the Vanderbilt Case that method of determining a taxable legacy has been condemned with respect to the corpus of the estate. The method of procedure adopted in the Vanderbilt Case to determine the value of that estate at the time of the decree of distribution is the same as has been adopted in this case, and the Supreme Court has said: "You cannot do that." These actuary tables have reference to quite a different subject, and cannot be introduced here to determine the present value of an estate for taxation when such estate can only be taxed when it comes into the absolute possession of the heirs many years later. If it is not the law with respect to the corpus of the estate, it is not the law with respect to the income of the estate, because there is no discrimination in the statute between the income and corpus of the estate. The statute provides for the levy of a tax upon the present vested possession and enjoyment of the estate, and not some future contingent interest. Moreover, what was actually enjoyed and possessed was the amount the superior court of this state allowed these heirs for their support during this time. During the time that the statute continued in force the money which the heirs actually received from the estate in possession and enjoyment was the amount allowed them for support and maintenance under the decree of partial distribution entered on the 16th day of November, 1900, for the sum of $500 a month, and was allowed as the amount reasonably necessary for the support and maintenance of the heirs in the same condition and circumstances as they were supported and maintained by the testator during his lifetime. This was the only part of the personal estate which the heirs received, as I have said before, in actual absolute possession and enjoyment. It was not the legacies that were received but allowances. What the Commissioner has, in effect, assessed and collected tax upon is the amount allowed these heirs by the superior court of this city for their maintenance pending the distribution of the estate by the court. I do not find anything in the law that requires any such assessment. I do not find any warrant for such taxation. I do not think it was the purpose

of the United States statute to assess as a legacy the amount that the superior court has allowed a child for its support.  So that, on that ground, I hold that the tax is not legal, and cannot be maintained.

There are other features of this assessment which I might touch on, but I think these two objections to the assessment are sufficient.  I think, without any question, this tax was not assessable against these heirs under any view, and that they are entitled to recover upon the facts stated in the complaint.  I, therefore, overrule the demurrer.