BaeNey, J.,
delivered the opinion of the court.
This suit is brought for the recovery, under the act of June 27, 1902 (32 Stat., 406), of the sum of $4,286.31, collected by the United States as an inheritance tax under the provisions of sections 29 and 30 of the act of June 13, 1898, commonly known as the Spanish war revenue law (30 Stat., 466), upon the residuary estate bequeathed by the will of the late Walter H. Tilden to Mary Wadleigh Stokes for life. The defendants have demurred to the petition, and this demurrer is before us for decision.
The provisions of the Spanish war revenue law, so far as they affect this case, are as follows:
“ Sec. 29. That any person or persons having in charge or trust, as administrators, executors, or trustees, any legacies or distributive shares arising from personal property, where the whole amount of such personal property as aforesaid *364 shall exceed the sum of ten thousand dollars in actual value, passing, after the passage of this act, from any person possessed of such property, either by will or by the intestate laws of any State or Territory, or any personal property or interest therein, transferred by deed, grant, bargain, sale, or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainer, to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, shall be, and hereby are, made subject to a duty or tax, to be paid to the United States, as follows— that is to say; Where the whole amount of said personal property shall exceed in value ten thousand and shall not exceed in value the sum of twenty-five thousand dollars the tax shall be: * *
This is followed by specific provisions graduating the tax upon legacies and distributive shares.
By the act of April 12, 1902, some-of the provisions of the act of June 13, 1898, supra, were amended and some were repealed. Section 29, providing for the collection of inheritance taxes, was not repealed as to estates vesting in possession or enjoyment prior to July 1,1902, for twenty years, but it was provided:
“ That all taxes or duties imposed by section twenty-nine of the act of June thirteenth, eighteen hundred and ninety-eight, and amendments thereto, prior to the taking effect of this act, shall be subject, as to lien, charge, collection, and otherwise, to the provisions of section thirty of said act of June thirteenth, eighteen hundred and ninety-eight, and amendments thereof, which are hereby continued in force, as follows.”
The above section ivas repealed to take effect on July 1, 1902, by an act approved April 12,1902 (32 Stat., 96).
This suit is directly predicated upon the act of June 27, 1902 (32 Stat., 406), the third section of which is as follows:
“ That in all cases where an executor, administrator, or .trustee shall have paid, or shall hereafter pay, any tax upon any legacy or distributive share of personal property under the provisions of the act approved June thirteenth, eighteen hundred and ninety-eight, entitled ‘An act to provide ways and means to meet war expenditures, and for other purposes,’ and amendments thereof, the Secretary of the Treasury be, and he is hereby, authorized and directed to refund, out of any money in the Treasury not otherwise appropriated, upon *365 proper application being made to the Commissioner of Internal Revenue, under such rules and regulations as may be prescribed, so much of said tax as may have been collected on contingent beneficial interests which shall not have become vested prior to July first, nineteen hundred and two. And no tax shall hereafter be assessed or imposed under said act approved June thirteenth, eighteen hundred and ninety-eight, upon or in respect of any contingent beneficial interest which shall not become absolutely vested in possession or enjoyment prior to said July first, nineteen hundred and two.”
The facts relating to the inheritance involved in this suit .are as follows:
Walter H. Tilden, of Philadelphia, died in March, 1899, and named the claimant as the sole executor and trustee of his will. By his will it is provided inter alia that Mary Wadleigh Stokes should enjoy during her natural life the income from his residuary estate, such income to be paid to her quarterly. The residuary personal estate thus bequeathed amounted to $120,303.94. Mary Wadleigh Stokes actually received as income up to July 1,1902, the date of the rejieal of the taxing law, the sum of $17,027.59, and in addition thereto a specific legacy of silver plate, etc., valued at $500, making a total of $17,527.59. The tax was assessed and collected upon the sum of $74,678.68 exactly in the same manner as if the interest of Mary Wadleigh Stokes in the estate consisted of an absolute cash bequest of that amount payable immediately to her. This sum of $74,678.68 was arrived at by the use of certain mortuary tables or a series of estimates of the average expectancy of life of individuals of various ages. These tables also purported to show the present value, to persons of various ages, of an annuity of $1 payable during life. In the preparation of the tables 4 per cent per annum was assumed as the value of money.
It is claimed by the plaintiff that under the third section of the act of June 27, 1902, just quoted, it was only liable to pay a tax upon the income actually received by it from the life estate of Mary Wadleigh Stokes prior to the repeal of •that law on July 1, 1902, together with the specific legacy mentioned of the value of $500. Hence it is also claimed by the plaintiff (though that fact is doubtless immaterial in the *366 consideration of this case) that the tax, the refunding of which is sought in this case, was illegally exacted, and if a proper course had been pursued could have been recovered from the defendants without the assistance of the act of June 27, 1902. Such course, however, was not pursued, the right of recovery was lost, and it is now conceded by both parties that the plaintiff’s right of recovery is dependent entirely upon the act last referred to.
It is contended by the defendants (1) that this court has no jurisdiction under the act of June 2, 1902; (2) that, conceding that it has jurisdiction, the claimant has no right of recovery under that act as disclosed by the allegations of the petition.
It is also contended by the defendants that this suit is barred by section 3228, Revised Statutes, because not presented to the Commissioner of Internal Revenue within two years from the passage of the refunding act. This contention seems to follow as a corollary from the denial of jurisdiction, and the two propositions will be discussed together.
1. The defendants argue that section 3'of the act of June 27, 1902, above quoted, confers exclusive jurisdiction on the Secretary of the Treasury to determine who are entitled to its benefits, and that his decision upon that question is final; that that section confers upon the Secretary of the Treasury judicial functions in the determination of facts and the law applicable to the same, and that such determination is not subject to review by the courts. It is also argued by the defendants that this suit has relation to the revenue system of the United States, and hence is to be governed by some of the principles which have been established regarding the refunding of taxes under that system. The several statutes relating to that subject and numerous decisions under them have been cited to sustain that contention. As it appears to us, the remedy given by Congress in this case has no relation whatever to the revenue system so far as the question of jurisdiction or method of procedure is concerned. True, the money which is directed to be refunded was illegally collected under the revenue system, and the refunding act provides that application for the same must be made to the *367 Commissioner of Internal Revenue; but as the tax was paid voluntarily its legality or illegality does not enter into the case. Reduced to its lowest terms, the act simply directs the Secretary of the Treasury to pay definite sums of money to certain persons therein described. As, we think, was very properly said by the Attorney-General in an opinion relating to the construction of this statute:
“ The provisions of this statute are special and apply to a particular class of obligations against the Government. Being special, these claims are not governed by the provisions of the prior general statute. (R. S., sec. 3228.) Suits brought to recover money due under this act are not’ actions for the recovery of taxes, but for money held by the Government in trust for the benefit of the parties to whom it rightfully belongs.” (26 Op. Atty. Gen., 195, 197.)
We do not think it can properly be said that this suit arises under the revenue laws at all. It arises under a statute for the refunding of taxes illegally collected under the revenue laws, and the procedure and rules governing it are no different than they would be if the money had reached the Treasury in any other manner. It follows from the foregoing that, in the opinion of the court, this suit is not 'barred by any statute of limitations.
The question as to when a statute confers merely ministerial duties upon an executive officer which are subject to the control of the courts, and when its execution involves judicial functions and discretionary powers, has often been before the courts. While it may appear that the decisions upon this subject are not entirely harmonious, yet the same general principle is recognized in all of them, and this seeming lack of harmony arises from the great diversity of statutes which have been under consideration in these cases. The general principle governing this class of cases is well stated by Taney, Ch. J., in Decatur v. Paulding (14 Pet., 497, 515), as follows:
“ The court could not entertain an appeal from the decision of one of the secretaries, nor revise his judgment in any case where the law authorized him to exercise discretion or judgment. Nor can it by mandamus act directly upon the officer, and guide and control his judgment or discretion' in the matters committed to his care, in the ordinary discharge of his duties.”
*368 Also, by Mr. Justice Bradley, in United States ex rel. Dunlap v. Black (128 U. S., 40, 48), where it was said:
“ The court will not interfere by mandamus with the executive officers of the Government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose; but when they refuse to act in a case at all, or when, by special statute, or otherwise, a mere ministerial duty is imposed upon them — that is, a service which they are bound to perform without further question— then, if they refuse, a mandamus may be issued to compel them.”
The case of Medbury v. United States (173 U. S., 492) was much like the one at bar, arising under a statute requiring the Secretary of the Interior to repay to certain entrymen or their heirs and assigns fees in cases where entries were not confirmed. Suit was brought in this court and dismissed for want of jurisdiction. In reversing this court Mr. Justice Peckham, speaking for the court, said:
“ But where, as in this case, there is no disputed question ■of fact, and the decision turns exclusively upon the proper construction of the act of Congress, the decision of the Secretary refusing to make the payment is not final, and the Court of Claims has jurisdiction of such a case.” (Id., 498.)
The case of Thacher v. United States (149 Fed. Rep., 902) arose in the United States Circuit Court for the District of Massachusetts, and, as in the case at bar, was brought under the act of June 27, 1902. A demurrer was interposed but was overruled, and the suit went to judgment. The question of jurisdiction does not appear to have been raised in the case, but that fact only indicates that the court and counsel did not consider that there was any such question in the case. The counsel for the defendants contends that by the act of June 27, 1902, the Secretary of the Treasury is to determine both questions of law and fact, and hence that his duties thereunder are judicial. As we view the statute there is no question either of law or of fact for him to decide judicially. He is only required to identify a certian class of persons, and when identified, to pay thém the sum to which under the law they are entitled. It may require some knowledge of the law to determine that fact, but none *369 the less the ultimate determination is a fact. In the Medbury case, supra, the Secretary of the Interior had to know the law of descent in the States where the entrymen lived, and may have died, in order to identify the parties entitled to a refund, just as the Secretary of the Treasury in this case must know what taxes have been “ collected on contingent beneficial interests which shall not have become vested prior to July 1,1902,” in order to determine who are entitled to a refunding of the same. When this identity is determined there is no discretion to be exercised. In short, the act of June 27, 1902, is an appropriation to a certain class of persons to be paid by the Secretary of the Treasury, when identified by him. The fact that this identification requires some knowledge of law does not change the character of his duties. This claim rests solely iipon the provisions of the act of June 27,1902, and we think is clearly within the jurisdiction of this court by the act of March 3, 1887 (24 Stat., 505).
II. We come now to the question whether the facts alleged in the petition constitute a cause of action against the defendants.
The act of June 27, 1902, was before the Supreme Court in the case of Vanderbilt v. Eidman (196 U. S., 480), and it was there held that the two clauses of section 3 were to be construed together; that is to say, that the taxes which by the first clause are directed to be refunded are the same as those which are thereafter in the second clause forbidden to be collected. It is thus settled that the taxes to be refunded are such as have been collected on “ contingent beneficial interests not absolutely vested in possession or enjoyment ” prior to July 1, 1902.
The seventeenth clause of Cornelius Vanderbilt’s will devised the residue of his estate to his executors, in trust, to collect the income and apply so much of the same as might be, in their judgment, advisable for the support, maintenance, and education of his son Alfred G.; to accumulate any surplus income, to be paid to him when he arrived at the age of 21 years; and thereafter to pay the net income of his estate to him as received until he arrived at the age of 30 *370 years, when he was to be put in full possession of one-half of said estate to be set apart for that purpose by the executors and trustees; and upon the further trust, thereafter to' pay to the said Alfred G. the income from the balance of said estate until he should arrive at the age of 35 years, when he was to be put in possession of the balance of said estate-The right of Alfred G. to the beneficial enjoyment, as provided in the will, until he became 30 years of age, was appraised at $5,119,612.43, and upon this sum the executors paid a death duty, under sections 29 and 30 of the act of June 13, 1889, supra, at the rate of per cent, the tax amounting to $115,191.28. After payment of this amount without protest and subsequent to the passage on March 2,. 1901 (31 Stat., 938), of an amendment to the act of June 13, 1889, the Commissioner of Internal Revenue, considering-that by that enactment Alfred G. had become immediatety liable for a tax on his right to succeed to the whole residue if he lived to the ages of 30 and 35 years, respectively, assessed a death duty based upon that hypothesis. In making this assessment, as by the mortuary tables it was shown that Alfred G. had a life expectancy of more than 35 years, the commissioner assessed the interest as a vested estate equal in value to the sum of the entire residuary estate, viz, $18,972,-117.46, and upon this valuation a tax was levied producing $426,872.64. This sum, less the tax previously paid, was paid by the executors under protest, and the suit under consideration was to secure the refunding of that sum from the Government. The question of the legality of the tax levied on the appraisement of,Alfred G. Vanderbilt’s right to the beneficial enjoyment of the income of the residuary estate until he was 30 years of age was not before the court for decision. Four questions were certified by the Circuit Court of Appeals to the Supreme Court for answers, only one of which, the third,, was answered. That question was as follows, and was answered in the negative:
“ Did sections 29 and 30 of said act authorize the assessment and collection of a tax with respect to any of the rights or interests of Alfred G. Vanderbilt as a residuary legatee of the personal estate of Cornelius Vanderbilt under the *371 seventeenth clause of the will, with the exception of his present right to receive the income of such estate until he attains the age of 30 years, prior to the time when, if ever, such rights or interests shall become absolutely vested in possession or enjoyment? ”
While, therefore, the able opinion of Mr. Justice White in that case'does not directly decide the particular point in question in the case at bar, we think its reasoning does so by implication. Without attempting a complete analysis of the opinion it appears to us to distinctly decide that the war-revenue act (act of June 13, 1898, supra) did not impose duties upon legacies which were vested merely within the technical meaning of that term, but only upon legacies which were vested in actual possession and enjoyment; and that by the terms of that statute and its amendments the turning over of such legacy to the beneficiary and the payment of the tax were intended to be contemporaneous. *
The case of Disston v. McClain (147 Fed. Rep., 114) was a suit to recover from an internal-revenue collector a tax which had been paid under protest upon a legacy under the same act. The legacy was an annuity of $15,000, payable quarterly during the life of the legatee. The circuit court held that this bequest was in effect a legacy of a life estate in the present value of so much of the personal property of the testator as would be necessary to produce an annuity of $15,000, and that said estate vested in possession or enjoyment upon the death of the testator. The Circuit Court of Appeals reversed the lower court, holding that the provision in the will in favor of the legatee “ was a series of legacies and bequests vesting in possession or enjoyment at stated intervals, but each contingent before vesting on the legatee’s being alive when it became due,” and decided that the war-revenue act imposed no tax on the interest of the legatee other than on the specific payments of the annuity bequeathed to her as the same should from time to time fall due. On October 21, 1907, the Supreme Court denied the petition of the defendants for a writ of certiorari in this case. (207 U. S., 587.)
The case of Union Trust Co. v. Lynch (148 Fed. Rep., 49) presented precisely the same question as the one in the case at bar. In that case the testator bequeathed- his entire per *372 sonal estate, the clear net value of which was $778,491.28, in trust for his five children, and directed the trustees to pay the net income of said estate in equal shares to his said children until they each should reach certain ages therein specified. The periods that were to elapse before each child was to receive his proportional share of the estate were not the same, so that their several life estates were of different values. The testator died May 31, 1900, and the final decree distributing the estate was entered June 26, 1901. The Commissioner of Internal Eevenue determined the then present value of the whole estate to each of the heirs as an annuity until they should arrive at the age specified in the will, made an estimate of the value of each one of these interests as of the date of June 26, 1901, as an annuity to each, and made the assessment accordingly. Two subsequent assessments upon the estate were made, one based on the total amount that would ultimately be distributed to the legatees, and the other based upon the value of the entire corpus of the estate as it then stood. The total amount of all three assessments was $11,375.93, which was paid by'the executors of the estate under protest. The suit was against the Collector of Internal Eevenue to recover this sum, claiming that it had been illegally assessed and collected. The defendant entered a demurrer to the complaint, which was overruled by the court, and it was decided that where the children and legatees of a testator were to receive only the income from their respective shares in the estate until they reached stated ages, which did not occur in any case until after July 1,1902, when the repeal of section 29 of the war-revenue act took effect, under the act of June 27, 1902, sufra, such life estate was not an interest liable to taxation as such, and that any such tax previously collected should be refunded; and that the interest of such legatees for the purposes of taxation was the value of the income received by each, respectively, from the estate prior to July 1,.1902, and which was subject to a tax only in case it amounted to $10,000. The case was affirmed by the Circuit Court of Appeals (164 Fed. Rep., 161), and on May 17,1909, the Supreme Court denied the application of the defendants for a writ of certiorari (214 U. S., 523).
*373 The court in the case of Disston v. McClain, supra, while it said that it was “ inclined to think ” that the reasoning of the court in the Vanderbilt case would exclude from taxation under the war-revenue law the interest of Alfred G. in the residuary personal estate, the income of which he was to enjoy, attempts to make a distinction under that law between a legacy of an annuity to be paid out of an estate, and a legacy of the net income of an estate, and the same contention is made by the defendants in the case át bar. When we remember, as is well stated by the court in Disston v. McClain (pp. 116, 117), that it is a “canon of construction of universal acceptance in American and English jurisprudence, that no tax burden is held to be laid on citizen or subject unless the legislative intention to so impose it is expressed in clear and unequivocal language, and that in cases of doubt, statutes imposing taxes are construed most strongly against the Government,” it does not seem proper that any such technical distinction should be made. Whether the bequest is an annuity of a certain sum to be paid out of an estate, or of a life interest in a personal estate which will yield the same sum, practically the interest vested “ in possession or enjoyment ” is the same. The language of the court in Vanderbilt v. Eidman, sufra (p. 495), would seem to negative any such distinction. It was there said:
“ In view of the express provisions of the statute [war revenue act] as to possession or enjoyment and beneficial interest and clear value, and of the absence of any express language exhibiting an intention to tax a mere technically vested interest in a case where the right to possession or enjoyment was subordinated to an uncertain contingency, it would, we think, be doing violence to the statute to construe it as taxing such an interest before the period when possession or enjoyment had attached.”
The questions presented to the court in this case were very interesting as well as important, and many authorities bearing incidentally upon them have been called to our attention. They have all been carefully examined, but a further review of cases would serve no good purpose at this time. The cases above discussed are believed to be decisive of the case at bar. Therefore, both upon legal principles governing the construction of statutes, as well as authority, if the allegations of the *374 petition are sustained, we believe the plaintiff is entitled to recover the judgment prayed for, and the demurrer is overruled.
Howry, J., was not present at the trial of this case and took no part in its decision.