BEER et al. v. MOFFATT, Collector of Internal Revenue.

(District Court, D. New Jersey. January 29, 1912.)

1. INTERNAL REVENUE (§ 38*)—TAXES—VOLUNTARY PAYMENT—RECOVERY.

Where executors from whom a collector of internal revenue had demanded certain legacy taxes under War Revenue Act June 13, 1898, c. 448, 30 Stat. 448 (U. S. Comp. St. 1901, p. 2286), on proceedings to collect the taxes, with penalty, did not make a return until after the time for payment without penalty had elapsed, and then only after a return had been made by a deputy collector, on which they paid the tax, without protest, the payment was voluntary, and hence they were not entitled to maintain an action to recover the same, though they had refused for a long time to make a return or pay the tax.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 38.*]

2. INTERNAL REVENUE (§ 8*)—LEGACY TAX—REFUNDMENT—STATUTE.

War Revenue Act June 13, 1898, c. 448, 30 Stat. 448 (U. S. Comp. St. 1901, p. 2286), imposes a tax on legacies, and Act Cong. June 27, 1902, c. 1160, § 3, 32 Stat. 406 (U. S. Comp. St. Supp. 1909, p. 879), authorizes the refunding of so much of the tax as may have been collected on contingent beneficial interests which had not vested prior to July 1, 1902, and provides that no tax shall thereafter be assessed on or in respect of any contingent beneficial interest not absolutely vested in possession or enjoyment prior to July 1, 1902. Testator, who died July 18, 1901, bequeathed three-twelfths of the remainder of his estate to executors in trust to invest and pay the income of one share to each of his three daughters for life, and, on the death of any one leaving issue, the principal of her share to such issue, and, if she died without issue, then to her surviving brothers and sisters, and to the issue of such of them, if any, as might have died leaving issue. Held, that though the daughters might not have been able to recover from the executors the income to which they were entitled, under such bequest, under the statutes of New Jersey regulating the administration of estates prior to July 1, 1902, their interests in such income were nevertheless vested prior to that date, and were therefore not relieved from revenue taxation by Act Cong. June 27, 1902.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 11, 12; Dec. Dig. § 8.*

Internal revenue tax on legacies, inheritance and transfers, see note to Ward v. Sage, 108 C. C. A. 417.]

Action by Walter E. Beer and another, as executors of Julius Beer, deceased, against Isaac Moffatt, Collector of Internal Revenue, to recover certain legacy taxes paid under the war revenue act of 1898. Judgment for defendant.

McDermott & Enright, for plaintiffs.
Walter H. Bacon, Asst. U. S. Dist. Atty., for defendant.

CROSS, District Judge. The above action was tried before the court without a jury; a written stipulation to that effect having pursuant to the statute been duly signed and filed by the attorneys of the respective parties. Julius Beer died July 18, 1901, while a resident of Monmouth county, in the state of New Jersey, leaving a last will and testament which was duly probated by the plaintiffs, named therein as executors, before the surrogate of said county October 18, 1901, who upon that date issued letters testamentary to them, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

they have ever since acted as such. This action is brought to recover the sum of $14,230.38, being the amount of certain taxes paid by the plaintiffs as executors March 7, 1904, and which are alleged to have been assessed and exacted by the defendant as internal revenue collector under the war revenue act of 1898. It is contended on behalf of the defendant that the payment of said taxes by the plaintiffs was voluntary, and that consequently it makes no difference in the determination of the issues herein whether they were legally or illegally assessed.

[1] This being a question of primary importance, should be dealt with at the outset. Fortunately the facts in relation thereto have, as above stated, been stipulated so that the question is mainly one of law. They may be found in paragraphs 4 and 5 of the stipulation taken in connection with Exhibit C referred to in paragraph 4, and a letter from certain attorneys of the plaintiffs to the defendant as collector of internal revenue, dated March 7, 1904, inclosing the check by which the taxes were paid, which letter was offered and received in evidence at the trial without objection.

The relevant paragraphs of the stipulation are as follows:

(4) "That the defendant personally or by his deputies, claiming to act under 'An act to provide ways and means to meet war expenses and other purposes,' approved June 13, 1898, and the amendment thereof, did demand of the plaintiffs that they pay the tax provided for under section 29 of said act on account of the legacies bequeathed under said will to the children of testator, in accordance with a certain 'legacy return' made by A. C. Hildreth, deputy collector, hereto annexed marked 'Exhibit D,' under threats of penalties under section 3176, Revised Statutes, and sections 29, 30, and 31 of act of June 13, 1898. That annexed hereto, marked 'C,' is a true copy of a communication received by plaintiffs from defendant about February 17, 1904. That annexed hereto marked 'Exhibit E' is a schedule of personal property of decedent, approved by the defendant as collector pursuant to the indorsement thereon. That the defendant personally or by his deputies did thereafter insist that the said plaintiffs as executors were liable to pay a tax to the defendant as collector under section 29 of said act of June 13, 1898, as amended by sections 10 and 11, approved March 2, 1901, to the amount of $14,230.38, and did threaten, in case of the refusal of the plaintiffs to pay the same, to enforce against them all the penalties and punishments provided by said statutes as in case of a failure to pay tax lawfully assessed thereunder.

"(5) That the said plaintiffs did for a long time refuse to make said returns or to pay said tax, but did finally in March, 1904, pay said tax."

Exhibit C, referred to in paragraph 4 of the stipulation, and the letter above mentioned, follow in the order named:

"Internal Revenue Service, First District of New Jersey, Collector's Office.
"Camden, N. J., Feb. 17, 1904.

"Mr. Walter E. Beers, Executor for the Estate of Julius Beers, Deceased, New York City, N. Y.

"Sir: You are hereby given final notice that you are required, under the United States laws, to make return of internal revenue tax on the estate of the said Julius Beers, without further delay; said return must be made to Deputy Collector Adolph Ernst, or to this office. We are instructed by the treasury department to commence suit against this estate if return is not made immediately and I beg to refer you to section 3176, Revised Statutes, which provides a penalty of 50 per cent. additional tax for refusal or neglect of the executors to make such return as provided by law; also to sections

29, 30 and 31 of the act of June 13, 1898, which provides an additional penalty of one thousand dollars for refusal to make such return when same is demanded by a collector or deputy collector of internal revenue.

"I trust in your own interest that you will take this matter up immediately, for if suit is brought to recover the tax, it will include all penalties as well."

"Respectfully,                              I. Moffatt, Collector."

"New York, March 7, 1904.

"Hon. I. Moffatt, Collector Internal Revenue, Camden, N. J.

"Dear Sir: We inclose herewith check for fourteen thousand two hundred and thirty $^{38}/_{100}$ dollars made by the executors of the estate of Julius Beer, deceased, in full payment of the internal revenue tax imposed upon the estate by your office. Will you kindly send us a receipt therefor, and be assured of our appreciation of the courtesy of yourself and of your Mr. Hildreth, and oblige,

"Very truly yours,

"[Signed by attorneys who admittedly acted for the plaintiffs.]"

The fact that the plaintiffs refused "for a long time to make said return, or to pay said tax," affords no warrant for a legal presumption that such refusal was based upon the illegality of the tax, since as a matter of common knowledge it might have been based on other and different reasons. And this is true notwithstanding that, according to the statement of facts, the collector demanded payment of the tax under threats of penalties under section 3176 (U. S. Comp. St. 1901, p. 2068), and sections 29, 30, and 31 of the act of June 13, 1898 (chapter 448, 30 Stat. 46 [U. S. Comp. St. 1901, p. 230]), and did further insist upon the liability of the plaintiffs to pay him said tax, amounting to $14,230.38, and did threaten, in case of the refusal of the plaintiffs to pay the same, to enforce against them all the penalties and punishments provided by said sections as in case of a failure to pay a tax lawfully assessed thereunder. Upon inspection of Exhibit C, it appears that it refers only to the making of a return by the plaintiffs and the imposition of penalties in case of failure so to do. The plaintiffs, however, as a matter of fact, never did make a return, and the one and only one made, and that upon which the assessment of the tax in question was based, was made by a deputy collector the day before the tax was paid. Inasmuch as the plaintiffs, by their refusal or neglect to make a return, had already subjected themselves and the estate of which they were executors to the penalties prescribed by the sections above mentioned, it is difficult to see wherein the plaintiffs can with propriety assert that they were coerced into making the payment. They were already under the same liability to penalties for failure to make the return that they would have been if they had also refused to pay the tax.

It should be expressly noted that it nowhere appears in the case that the plaintiffs ever claimed that the tax was illegal, that it was paid under any form of protest, either verbal or written, or that suit would be instituted to recover it back. There is not a single word to show that the plaintiffs in any way or manner or to any extent demurred either to the legality of the tax or to its payment, except that they, for a long time, refused to pay it, which, however, as already stated, cannot by any reasonable construction be held to mean that

they refused to pay it because it was illegal; but, assuming the contrary, there is nothing in the case to show that they had not prior to its payment waived or surrendered any objections thereto, which they once held. The letter to the collector which inclosed the check for the payment of the tax certainly conveys that impression since it contains not a word of objection or protest, nor does it refer directly or indirectly to anything of that character as having occurred between the parties in the past. On the contrary, it is couched in terms of a pleasant and complaisant character.

I have not been referred to, and I am not aware of, any case where taxes paid under circumstances like those hereinabove detailed have been recovered back by suit. The law applicable to the present situation and controlling upon this court was quite recently laid down by the Circuit Court of Appeals of this circuit in the case of Herold v. Kahn, 159 Fed. 608, wherein at page 612, 86 C. C. A. 598, at page 602, Judge Gray, speaking for the court of the payment of disputed taxes, in plain and terse language says:

"Though there is some conflict in the dicta of the Supreme Court, we think that the true doctrine is that when taxes are paid under protest that they are being illegally exacted, or with notice that the payor contends that they are illegal and intends to institute suit to compel their repayment, a sufficient foundation for such a suit has been established. Chesebrough v. U. S., 192 U. S. 253, 24 Sup. Ct. 262, 42 L. Ed. 432; City of Phil. v. Collector, 5 Wall. 720, 731, 18 L. Ed. 614."

Moreover, the pleader who drafted the declaration in this action evidently recognized the correctness and force of the principle thus established, as the following extract therefrom shows:

The defendant "did unlawfully demand of, and by force and duress collect from, the plaintiffs as executors, by way of taxes upon said legacies, a sum of money, to wit, the sum of $14,230.38 which said sum the said plaintiffs, executors as aforesaid, involuntarily and under threat of distraint against their property in case of their refusal so to do, and the enforcement against them of the pains and penalties provided by said statute in case of violation thereof, were compelled and did pay to the said defendant by reason of the said illegal demands and threats, protesting that they, as executors as aforesaid, were not liable to pay the same or any part thereof, and that the said tax was erroneous, illegal, and wrongfully assessed and collected."

That allegation, although material and requisite to good pleading, is wholly unsupported by the statement of the case, in which nothing can be found which shows or tends to show that the taxes in question were paid under protest that they were being illegally exacted, or with notice that the plaintiffs contended they were illegal, and that they intended to institute a suit to compel their repayment.

[2] Judgment must, therefore, be entered for the defendant, unless the following position of the counsel of the plaintiffs is well taken. They contend:

"That in any event protest is not necessary for the recovery of the taxes collected on the life estates of the daughters, since these are refundable under the act of June 27, 1902, regardless of whether they were voluntarily paid or not"—citing in support of this position Thatcher v. U. S. (C. C.) 149 Fed. 902.

That act and case both refer to the refunding of taxes on contingent interests, which did not become vested in possession or enjoyment prior to July 1, 1902, so that, in determining this branch of the case, it becomes necessary, in effect, to determine whether or not the legacies to the daughters became vested in the sense indicated prior to that date, or, in other words, to determine whether the taxes as to the life estates of the daughters were or were not legally assessed.

The act referred to was passed June 27, 1902, and is entitled:

"An act to provide for refunding taxes paid upon legacies and bequests for uses of a religious, charitable or educational character for the encouragement of art and so forth, under the act of June thirteenth, one thousand eight hundred and ninety-eight, and for other purposes." 32 Stat. c. 1160, p. 406, Supp. Comp. Stat. 1909, p. 878.

Section 3 contains the relevant matter, and is as follows:

"That in all cases where an executor, administrator, or trustee shall have paid, or shall hereafter pay, any tax upon any legacy or distributive share of personal property under the provisions of the act approved June thirteenth, eighteen hundred and ninety-eight, entitled, 'An act to provide ways and means to meet war expenditures, and for other purposes,' and amendments thereof, the Secretary of the Treasury be, and he is hereby authorized and directed to refund, out of any money in the treasury not otherwise appropriated, upon proper application being made to the commissioner of internal revenue under such rules and regulations as may be prescribed, so much of said tax as may have been collected on contingent beneficial interests which shall not have become vested prior to July first, nineteen hundred and two. And no tax shall hereafter be assessed or imposed under said act approved June thirteenth, eighteen hundred and ninety-eight, upon or in respect of any contingent beneficial interest which shall not become absolutely vested in possession or enjoyment prior to said July first, nineteen hundred and two."

In United States v. Fidelity Trust Co., 222 U. S. 159, 32 Sup. Ct. 60, 56 L. Ed. —— (No. 280 Oct. Term, 1911), the Supreme Court of the United States, speaking by Mr. Justice Holmes, concerning the above section, says:

"The words, 'which shall not have become vested,' quoted above, mean the same as 'absolutely vested in possession or enjoyment,' in a later clause, ending the tax on contingent interests, unless so vested before July 1, 1902. Vanderbilt v. Eidman, 196 U. S. 480, 500 [25 Sup. Ct. 331, 49 L. Ed. 563]."

The plaintiffs contend that no right to immediate possession or enjoyment passed to the daughters prior to the repealer, more especially because of certain provisions of the New Jersey statutes, respecting the administration of decedents' estates.

The first act referred to is "An act respecting the orphans' court," etc. (P. L. 1898, p. 715), and the pertinent section 171 made provision as follows:

"No distribution of the goods, chattels, credits and personal estate of any person dying intestate shall be made until one year after granting administration thereof unless a decree barring creditors has been entered, in which case such distribution may be made whenever twenty days shall have elapsed since the entry of such decree barring."

The second reference is to section 1 of "An act concerning legacies" (2 Gen. Stat. 1895, p. 1938), as follows:

"That any person to whom any legacy, etc., has been or may be made by any last will. etc., may maintain an action of debt, etc., against the executor in the Supreme Court or any of the Circuit Courts of the state for the recovery of such legacy after it becomes due * * * provided that if no time is fixed by the will for the payment of such legacy the said executor or administrator shall have one year after probate to pay and satisfy the legacies given therein."

Counsel also cite and rely upon the following cases: Davison v. Rake et al., 45 N. J. Eq. 767, 18 Atl. 752, and Welsh v. Brown, 43 N. J. Law 37. These cases, the first of which was decided by the Court of Errors and Appeals, and the second by the Supreme Court of New Jersey, undoubtedly establish the rule that in that state legacies in general do not bear interest until one year after the death of the testator. To that rule there are, however, several well-recognized exceptions, and included in them are legacies like those now under consideration.

The will of Mr. Beer bequeathed, with a qualification which has no present signification, three-twelfths of the rest, residue, and remainder of his estate to the executors in trust, to invest the same at their discretion, and to pay the income of one share thereof to each of his three daughters for life, and, upon the death of any daughter leaving issue, he bequeathed the principal of the share to her issue, or, if she died leaving no issue, then he bequeathed the same to her surviving brothers and sisters, and to the issue of such of them, if any, as might have died leaving issue. It thus appears that there was bequeathed to each daughter in trust, the income of a one-twelfth interest in the rest, residue, and remainder of the testator's estate; that the executors were charged to hold said fund, and were given a discretionary power as to its investment. Under these circumstances, interest on the daughters' legacies ran from the time of the testator's death, notwithstanding the terms of the New Jersey statutes and decisions above referred to. The following cases support the proposition: In Green v. Green, 30 N. J. Eq. 451, it was so held by Chancellor Runyon, and the decree therein entered by him was affirmed on appeal sub nom Green v. Blackwell, 32 N. J. Eq. 768, in which case the Court of Appeals followed its decision in Van Blarcom v. Dager, 31 N. J. Eq. 783, wherein it appeared that the income of certain property was bequeathed to testator's wife for life, with a gift over of the principal at her death. The court in answering the question as to the time when the wife's income began to accrue says:

"It was decreed by the Vice Chancellor, to begin at the expiration of one year from the testator's death. To the correctness of the decree in this particular I am unable to assent. It is grounded on the general rule that legacies bear interest from the time they are payable, and upon the statutory provision that the executor or administrator shall have a year after probate in which to pay legacies, where no time for their payment is fixed by the will. This general rule has been expressed and applied in cases adjudged in this state. Church at Acquackanonk v. Ackerman's Ex'r, 1 N. J. Eq. 40; Brinkerhoff v. Merselis's Ex'r, 24 N. J. Law, 680; Halsted v. Meeker's Ex'rs, 18 N. J. Eq. 136; Hennion's Ex'r v. Jacobus, 27 N. J. Eq. 28; Howard v. Francis, 30 N. J. Eq. 444. In all these cases the legacies were specific sums, or the interest of such sums, and differ from bequests of the residuary personal estate made to a legatee for life. This distinction is explained and enforced by the Chancellor in the recent case of Green v. Green, 30 N. J. Eq.

452, in which the opinion was delivered after the decision of the present case. The rule that, where the residuary personal estate is given to a legatee for life, the interest thereon accruing from the testator's death shall, in the absence of any direction to accumulate, go to the tenant for life, is declared by the Chancellor to be established. It is placed, not on the presumption that the life interest was given for support, but on the equity which seeks, as between the life tenant and the remainderman, to give to each his due. To give the interest for the first year to the remainderman by treating it as part of the principal is correctly said to be injustice to the tenant for life."

The same principle was also laid down by the Supreme Court in Welsh v. Brown, supra, one of the cases cited by plaintiff's counsel.

Moreover, the facts in the case under consideration are not dissimilar to those appearing in United States v. Fidelity Trust Company, supra, except that in that case the life tenant had actually received a considerable amount of interest from the trust fund invested by the executors for her benefit. In the case at bar it appears that only one of the daughters, all of whom it is admitted were of full age at the time of their father's death, had prior to July 1, 1902, received any income from her legacy, and that one but a small sum. The succession right of these daughters to their legacies became taxable, if at all, as of the date of the death of the testator, although not payable until a year after his death. In Hertz v. Woodman, 218 U. S. 205, 30 Sup. Ct. 621, 54 L. Ed. 1001, the court says:

"Upon the facts certified, the right of succession which passed by the death of the testator was an absolute right to the immediate possession and enjoyment, a right neither postponed until the falling in of a life estate, as in Mason v. Sargent, 104 U. S. 689, 26 L. Ed. 894, nor subject to contingencies, as in Vanderbilt v. Eidman, supra. No further event could make their title more certain nor their possession and enjoyment more secure. The law, then unrepealed and in full force, operated to fasten, at the moment this right of succession passed by death, a liability for the tax imposed upon the passing of every such inheritance or right of succession. The time for scheduling or listing was practically identical with the time for payment, and the listing or scheduling was required to be done by the executor charged with payment, but might be and was postponed for reasons of grace and of convenience. That is almost universal under any taxing system. The liability attaches at some time before the time for payment. But the liability for the payment of the tax exacted under section 29 of the act of June 13, 1898, accrued or arose the moment the right of succession by death passed to the defendants in error, and the occurrence of no other fact or event was essential to the imposition of a liability for the statutory tax upon the interest thus acquired."

In the present case the plaintiffs' testator died nearly a year before the repeal of the tax act took effect, and the question requiring answer is, as already stated, whether or not the daughters, at testator's death, became absolutely vested in possession of enjoyment of their legacies under his will. I think they did, and that the fact that they had not as yet received any income therefrom did not alter the situation. The question is to be determined by their right to receive the income rather than by its actual receipt. In fact, as well as in contemplation of law, the legacies were earning income for them. It is true that, in the absence of any specific direction contained in the will to the contrary, it is possible that such income would not have been payable to them until the expiration of one year from their

father's death, but, however that may be, it was nevertheless their income. They alone had the right to it. It was actually accruing on their legacies and for them, and the executors could safely have paid it to them in quarterly or half yearly payments, had they so chosen. The legacies, in other words, were absolutely vested in them, in possession or enjoyment, and either is sufficient. Ward v. Sage, 185 Fed. 7, 10, 108 C. C. A. 413. Moreover, it seems to me that in principle this case is answered by United States v. Fidelity Trust Company, supra, where the legacy of the life tenant was held taxable and the tax imposed not only upon the income she had received, which was admittedly taxable, but also upon that which she would or might receive during her life expectancy. In the course of his opinion in that case Mr. Justice Holmes says:

"On this ground (that the life tenant's estate was not absolutely vested in possession or enjoyment) it is argued at great length that only so much of the life interest of the niece as she had received before the date mentioned had vested in the sense of the clause. We are of opinion that this argument cannot be maintained. The interest of the niece was not a contingent right to income as it should accrue in her lifetime. It was a vested life estate in a fund. changing in investment at the discretion of the trustee, but retaining its equitable identity. Objections like those that are made to treating a life estate as a present unity in the enjoyment of the life tenant might be made to the similar treatment of absolute ownership in fee. In actual life a fee can be enjoyed only minute by minute, but, although eternal in theory of law, by the same theory at every moment it is all and wholly in the owner's hands. The statute does not invite speculation in a new nomenclature, or attempt to reach profounder conceptions than those familiar to the law. When it speaks of interests absolutely vested in possession, we presume that it uses familiar legal expressions in their familiar legal sense. It deals in terms with the interest that is the legal unit of right, not with the money received before a given moment. No better example of such an interest could be given than a life estate in a fund. the enjoyment of which actually has begun, none that more clearly and absolutely excludes the qualification 'contingent' in the sense of the law."

At the oral argument, it was insisted by counsel for the plaintiffs that the opinion of the Court of Claims in Fidelity Trust Co. v. United States, 45 Ct. Cl. 362 was a pertinent, if not controlling, authority in this. That insistment was made, however, before the decree of the Court of Claims had been reversed by the Supreme Court in United States v. Fidelity Trust Co., supra.

It would seem that in this case the legacies of the daughters, with upwards of 11 months interest, accumulated thereon, although unpaid, at the time of the repeal of the revenue law, were as much vested in them in possession or enjoyment as they would have been if the executors had paid them such accumulated income on the 30th day of June, 1902, the day before the repealing act took effect, or if they had paid them a semiannual installment on January 18th of that year, six months after testator's death. Had the executors pursued either course, the case of United States v. Fidelity Trust Co. would have been directly in point. That they either with or without a purpose chose to withhold such payments cannot affect the question of the liability of the legacies to taxation. If it could, they might have withheld such payments indefinitely awaiting a repeal of the law for the very purpose of escaping such liability.

Inasmuch, therefore, as the act of June 27, 1902, above referred to, is not deemed applicable to the legacies of the daughters in this case, the rule that requires payment to be made under protest is as applicable to the taxes paid upon their legacies as to those which were devised in fee, but whether that be so or not the taxes were legally assessed.

For the reasons above given, I find in favor of the defendant and against the plaintiffs, and judgment final will accordingly be entered in favor of the defendant, with costs.