BEER et al. v. MOFFATT, Internal Revenue Collector.

(Circuit Court of Appeals, Third Circuit. December 19, 1913.)

No. 1687.

INTERNAL REVENUE (§ 8*)—LEGACY TAX—REFUNDMENT—STATUTES—VESTING OF LEGACY.

Testator·bequeathed the residue of his estate, one-half to his widow and her heirs absolutely, in lieu of dower, and one-half to his executors, to divide into as many shares as testator had children surviving, and one share for the issue collectively of each child who might have died leaving

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

issue, the shares to be set apart, invested, and applied to the use of the children and the issue of deceased children according to specified provisions; that the income of one share to each son should be paid to him until he reached 21, when he was to be paid $20,000 out of the principal of his share, and that the income of the residue should be paid to him until he reached 25, when he was to have the same absolutely; that in case a son should die before reaching 25 and leave issue, his share should go to the issue equally, and if he died leaving no issue, then to his surviving brothers and sisters and the issue of deceased brothers and sisters per stirpes; and that as to the shares set apart for testator's daughters he directed payment of the income of one share to each daughter until her marriage, then bequeathed of such share to her $35,000, the income of the residue to be paid to the daughter for life, and on her death to her issue, if any, otherwise to her surviving brothers and sisters and their issue. One of testator's sons died in his lifetime, and he himself died July 18, 1901, at which time all the other sons were older than 25, and all the daughters were older than 21. *Held* that, notwithstanding under the state statutes of New Jersey the executors were not bound to pay the legacies until more than a year after testator's death, such fact did not affect the quality of the estates bequeathed, which vested absolutely in testator's children at the date of his death prior to the repeal of War Revenue Act June 13, 1898, c. 448, § 29, 30 Stat. 464 (U. S. Comp. St. 1901, p. 2307), by Act April 12, 1902, c. 500, § 7, 32 Stat. 96 (U. S. Comp. St. Supp. 1911, p. 980), and Act June 27, 1902, c. 1160, § 1, 32 Stat. 406 (U. S. Comp. St. Supp. 1911, p. 983), and hence, such legacies were taxable under such act.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 11, 12; Dec. Dig. § 8.*

Internal revenue tax on legacies, inheritances, and transfers, see note to Ward v. Sage, 108 C. C. A. 417.]

In Error to the District Court of the United States for the District of New Jersey; Joseph Cross, Judge.

Action by Walter E. Beer and another, as executors of Julius Beer, deceased, against Isaac Moffatt, Collector of Internal Revenue, to recover certain legacy taxes paid under War Revenue Act June 13, 1898, c. 448, §§ 29, 30, 30 Stat. 464, 465 (U. S. Comp. St. 1901, pp. 2307, 2308). From a judgment in favor of defendant (192 Fed. 984), plaintiffs bring error. Affirmed.

John M. Enright, of Jersey City, N. J. (McDermott & Enright, of Jersey City, N. J., of counsel), for plaintiffs in error.

J. Warren Davis, U. S. Atty., of Camden, N. J., and Walter H. Bacon, Asst. U. S. Atty., of Bridgeton, N. J., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. On March 7, 1904, the executors of Julius Beer paid to the United States $14,230.38, the amount of tax assessed by the Collector of Internal Revenue upon certain legacies given by the decedent's will. The executors made the proper claim for repayment, and brought the present suit after the claim was rejected. The parties agreed upon the facts, waived a jury, and tried the case before the late Judge Cross, who entered judgment in favor of the collector. Beer et al. v. Moffatt (D. C.) 192 Fed. 984. The tax was assessed under sections 29 and 30 of the War Revenue Act of 1898,

and the question for decision is, Did the legacies vest before July 1, 1902? If the answer is in the affirmative, they were properly taxed; if in the negative, the judgment is wrong.

The relevant facts are as follows: Julius Beer, a resident of New Jersey, died on July 18, 1901. He and two of his sons (who afterwards became the executors of the will) composed the firm of Weil & Co. His interest in the personal property of the firm—consisting of tobacco in bonded and free warehouses, of stocks and bonds, accounts, bills receivable, and moneys in bank—was the sole source of the legacies in question. He owned and disposed of some other property, real and personal, but these facts have no bearing upon the present controversy. Clause 8 of the will provides as follows:

"8. I authorize and direct my executors, with the consent of my wife, to continue the business that may be carried on by me at the time of my death, to such a period and in such a manner as a majority of my executors, that may qualify, may direct, and subject to the provisions of this article.

"And in the event of my business being thus carried on by my executors they may, at their discretion, defer the division of my estate as directed by article fifth hereof, until fifteen years after my death, provided, however, that my wife and my youngest child living at my death shall survive until such date, but such division shall not be deferred beyond the life of the survivor of my wife and said youngest child.

"And in the meantime, while the business is to be carried on, I direct that the income thereof to the extent of thirty-eight thousand dollars a year, shall be paid to my wife at such time and in such proportions as she shall direct for her use and for the education and support of our children, and if in any year the income of said business shall be less than thirty-eight thousand dollars, then, in the discretion of my executors, they may apply to the use of my wife so much of the capital invested in said business as shall, with the income during said year, equal the sum of thirty-eight thousand dollars."

The executors contend, first, that this clause of the will made the legacies contingent, because to continue the business would necessarily defer the time for paying the legacies, and moreover (since the legacies were to be paid from the residue of the estate), because while the business was going on the amount of the residue could not possibly be ascertained. The argument has some other aspects, but none of them needs much consideration, because as a whole the argument cannot be given such weight as it might possess if it were supported by the necessary facts. Except the following passage from the schedule of the decedent's firm property, there is nothing before us to show what the executors actually did under the foregoing clause. The schedule was made by the collector in March, 1904, and recites, that:

"The business was continued by the survivors until January 1, 1902, when a balance sheet was struck, and the interest of the deceased was ascertained in the sum of $2,411,526.53. The real estate was included in this amount, and was valued on the books at the sum of $123,113.77, so that the total standing to the credit of the deceased exclusive of real estate was the sum of $2,288,-412.76."

Under this schedule and the assessment made thereon the tax was calculated and collected with no other objection than the insistence that there was no liability at all; and we must assume, therefore, that the firm business was not continued beyond January 1, 1902. Accordingly, even if clause 8 did defer the vesting of the legacies until the business

should be closed—we express no opinion on this subject—the date of vesting was in fact postponed for less than six months, namely, from July 18, 1901, until the first day of the following year. Obviously this postponement is too short to benefit the executors; any legacy that vested before July 1, 1902, was liable to the tax; and we therefore turn at once to the remaining question, Did clause 5 of the will vest the legacies at the testator's death? The clause is as follows:

"5. All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath as follows: One-half thereof to my beloved wife, Sophia, and to her heirs and assigns absolutely, this provision being in lieu of dower in my estate; one-half thereof to my executors, their survivors and successors, in trust, to divide the same into as many shares as shall make one share for each child me surviving, and one share for the issue collectively of any child who may have died before me leaving issue, which said shares are to be set apart, invested, and applied to the use of my said children and the issue of deceased children as follows:

"As to the shares set apart for my sons, I direct my executors to invest the same at their discretion and pay the income of one share to each son until he reaches the age of twenty-one years, whereupon, twenty thousand dollars out of the principal of said share is to be paid to him and of the residue thereof, the income is to be paid to such son until he reaches the age of twenty-five years, whereupon I bequeath and devise the entire residue of such share to him absolutely. Provided, however, that as to the share set apart for my son, Henry, I direct that the income of his share is to be paid to him until he attains the age of twenty-eight years, when I bequeath and devise the residue of the principal of his share to him absolutely. Should any son die before reaching the age of twenty-five years and leaving issue, or should my son Henry die before attaining the age of twenty-eight years, and leaving issue, the share of the son so dying, or so much thereof as shall not have been advanced pursuant to the provisions hereof, is to go to his issue equally, to whom I bequeath and devise the same. Should any son (other than my son Henry) die before attaining the age of twenty-five years, or should my son Henry die before attaining the age of twenty-eight years, and leaving no issue, his share or so much thereof as shall not have been advanced as aforesaid, is to go to the surviving brothers and sisters, and the issue of deceased brothers and sisters, equally per stirpes, to whom I devise and bequeath the same.

"As to the shares set apart for my daughters, I direct my executors to invest the same at their discretion, and to pay the income of one share to each daughter until her marriage, and I bequeath of the principal of such share thirty-five thousand dollars to such daughter, upon her marriage, and of the residue of such principal the income is to be paid to such daughter for life, and upon her death leaving issue, I bequeath the residue of such principal to her issue, to be divided equally, share and share alike. Should any one of my said daughters die without leaving issue, then the share set apart for her benefit, I bequeath and devise to her surviving brothers and sisters and to the issue of such as may have died, equally per stirpes.

"Should any child of mine die before me and leaving lawful issue, such issue are to take collectively the share in my estate that would have been given to their parent, had he or she been living at the time of my death.

"In the event that any of my daughters has married in my lifetime, then I direct that from her share of my estate, there be deducted the amount that my books will show has been advanced to her at the time of her marriage, and of the residue of the principal of her share, she is to receive the income thereof for life, and upon her death leaving issue, the residue of such principal is to be paid to the issue equally."

Apparently Henry died in the testator's lifetime; all the other sons were older than 25 years in July, 1901, and all the daughters were older than 21 years; two of them having already married at their

father's death, and the third marrying a few months thereafter. The collector appraised and assessed the interest of each son as absolute and vested, and the interest of each daughter as a vested life estate. Judge Cross assumed that the interests of the sons were absolute and vested, and discussed clause 5 merely in its effect upon the life estates of the daughters. We see no need to distinguish; it is not denied that the sons were given absolute estates; the only question is, When did such estates, as well as the daughters' life estates, vest in possession or enjoyment under the proper construction of clause 5? If all the legacies vested in July, 1901, the Acts of April 12, 1902, and of June 27, 1902, did not relieve them from liability to the tax. As is well known, these statutes repealed section 29 of the War Revenue Act, fixing July 1, 1902, as the date when the repeal should take effect, and providing also for the refund of tax upon *"contingent* beneficial interests which shall not have become vested prior to July 1, 1902."  There is no dispute concerning the effect of the Acts of 1902. In the brief of counsel for the executors (page 11) it is conceded "that if the legacies were vested in possession or enjoyment prior to July 1, 1902, then the tax was legally paid, and cannot be recovered back, either under the refunding act or under the general practice permitting the recovery of a tax paid under compulsion or duress"—the position of counsel being that "the establishment of our contention that the tax was illegally assessed prior to the vesting of the legacy in possession or enjoyment necessarily brings us within the refunding act giving the right to recover."

The question therefore may be stated in these words: Under clause 5, were these legacies vested in possession or enjoyment before July 1, 1902? If it were not for the statutes of New Jersey concerning the administration of decedents' estates, an affirmative answer would be given without hesitation. We need not repeat what has already been said in several cases where the questions now involved have been elaborately discussed; it would merely burden the reports if we said again what has been sufficiently said in opinions of the highest authority. Vanderbilt v. Eidman, 196 U. S. 480, 25 Sup. Ct. 331, 49 L. Ed. 563; Herz v. Woodman, 218 U. S. 205, 30 Sup. Ct. 621, 54 L. Ed. 1001; U. S. v. Fidelity Trust Co., 222 U. S. 158, 32 Sup. Ct. 59, 56 L. Ed. 137. See, also, the following decisions in the Second and Ninth Circuits: Title, etc., Co. v. Ward, 184 Fed. 447, 107 C. C. A. 41; Ward v. Sage, 185 Fed. 7, 108 C. C. A. 413; Muenter v. Trust Co., 185 Fed. 480, 115 C. C. A. 390. Our own case of Herold v. Shanley (C. C. A. 3d Circ.) 146 Fed. 20, 76 C. C. A. 478, is not at all in conflict with these decisions, and we do not think it needs explanation.

Turning then to the New Jersey statutes (which we shall not refer to in detail), we find nothing in their provisions that requires us to answer the question differently. The fact that executors in that state are ordinarily not obliged to pay legacies until after a year from the testator's death has no effect upon the quality of the estate given to a legatee by the will. This period of delay is granted for purposes of administration, and does not transform an estate that would otherwise

be vested into an estate that is contingent: Baldwin v. Eidman (D. C. N. Y.) 202 Fed. 968. The New Jersey decisions concerning interest on legacies do not modify the statement just made. Welsh v. Brown, 43 N. J. Law, 37; Marsh v. Taylor, 43 N. J. Eq. 1, 10 Atl. 486; Davison v. Rake, 45 N. J. Eq. 767, 18 Atl. 752.

The judgment is affirmed.